District Court Judge Benjamin H. Settle
Magistrate Judge J. Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ETIENNE CHOQUETTE,

   Plaintiff,

   v.

CRIS DuVALL, Pharm. D., in her individual and official capacities; MICHELLE SOUTHERN, Pharm. D., in her individual and official capacities,; G. STEVEN HAMMOND, M.D., Chief Medical Officer, in his individual and official capacities; WILLIAM HAYES, Director of Pharmacy for the Washington Department of Corrections, in his individual and official capacities; and KEVIN BOVENKAMP, Assistant Secretary of the Washington Department of Corrections for Health Services, in his individual and official capacities,

   Defendants.

No. 3:15-cv-05838-BHS-JRC

THIRD AMENDED CIVIL RIGHTS COMPLAINT

This is a civil rights action for declaratory and injunctive relief and damages, alleging that Defendants deprived Plaintiff of necessary medical care while in their custody, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

## I. PARTIES

1.1 The plaintiff is Etienne Choquette, Inmate No. 345717.  He is confined to the Washington State Penitentiary (WSP), 1313 N. 13th Avenue, Walla Walla, WA 99362.

1.2 The Defendants are:

  1.2.1 Cris DuVall, Pharmacist

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 1

No. 3:15-cv-05838-BHS-JRC

jg298002

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Former employee of Washington State Department of Corrections

1.2.2   Michelle Southern, Pharmacist

Former Employee of Washington State Department of Corrections

1.2.3   G. Steven Hammond, M.D., Chief Medical Officer

Washington State Department of Corrections

1.2.4   Kevin Bovenkamp, Assistant Secretary of Health Services

Washington State Department of Corrections

1.2.5   William Hayes, Director of Pharmacy

Washington State Department of Corrections

## II.   JURISDICTION AND VENUE

2.1   This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

2.2   The Court has personal jurisdiction over Defendants within the Western District of Washington.

2.3   Venue is proper in the Western District of Washington because a substantial part of the events complained of occurred in this District, and because Defendants reside in this District.  28 U.S.C. § 1391(b).

## III.   FACTS

3.1   Plaintiff is an inmate at Washington State Penitentiary, inmate number 345717.

3.2   He claims an Eighth Amendment violation of deliberate indifference to serious medical needs leading to extreme and unnecessary pain and suffering to the extent of cruel and unusual punishment.

3.3   The Defendant medical providers of the Department of Corrections, in unreasonable reliance on the inferior medical opinions of non-treating, non-specialist employees, and against the recommendations of Plaintiff's treating neurologist, stopped his treatment with gabapentin, a nerve pain medication for his diagnosed multiple sclerosis (MS), with knowledge of his symptoms and that stopping the treatment would cause him wanton and unnecessary pain.

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 2

No. 3:15-cv-05838-BHS-JRC

jg298002

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

3.4     Plaintiff was diagnosed with MS in 2009, before his incarceration.

3.5     In early 2013, Plaintiff's MS had advanced enough to cause a significant increase in nerve pain (also known as neuropathic pain).  On November 7, 2013, DOC took him to a neurologist in Walla Walla, Washington named Steven S. Chung, M.D.

3.6     Dr. Chung documented that Mr. Choquette was "experiencing chronic symptoms of multiple sclerosis primarily of muscle spasticity and neuropathic pain."  After the examination, Dr. Chung prescribed an increase in Mr. Choquette's nerve pain medication, gabapentin, from 2400 mg a day to 3600 mg a day.  Mr. Choquette had been taking gabapentin since before his incarceration.  Dr. Chung's report is **Exhibit A**.

3.7     Gabapentin is a generic medication that is commonly used to treat nerve pain caused by multiple sclerosis.  This use is well known by medical professionals.

3.8     Gabapentin is not scheduled as a controlled substance and it is considered by medical professionals to have a low risk for tolerance or addiction.

3.9     Plaintiff's treatment with gabapentin was medically necessary.

3.10    The WA DOC Pharmaceutical Management and Formulary Manual (Formulary) is the DOC's policy governing medication treatment of prisoners.  **Exhibit B** is the cover page, Sections I through VI, and page 70 of the Formulary.  Page 70 lists Gabapentin (also known by the brand name Neurontin) as only an "Anticonvulsant" that is "Non-Formulary" and limits use of the medication for a "maximum of 1 year" requiring "NFR approval."  *Id*.  The Formulary also restricts the maximum dosage of gabapentin to 2400 mg/day without "specific approval."  *Id.*

3.11    Defendants William Hayes, G. Steven Hammond, and Kevin Bovenkamp participated in creating and implementing the Formulary and listing gabapentin as a non-formulary drug.

3.12    The Formulary provides that the Chief Medical Officer (Defendant Hammond) together with the Director of Pharmacy (Defendant Hayes) "will select authorized pharmacists to respond to 'Non-Formulary Requests (NFRs),'" that such pharmacists are designees of the

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 3

No. 3:15-cv-05838-BHS-JRC

jg298002

Pharmacy Committee, and that appeals of NFR decisions by providers are made to the Director of Pharmacy (Defendant Hayes) who discusses them with the Chief Medical Officer for decision. Exhibit B at pp. 14–15.

3.13   On November 27, 2013, one of Mr. Choquette's primary care providers at the prison, PA-C Jo Phillips, submitted a "Request to Use Non-Formulary Drug" to the Pharmacy and Therapeutics Committee ("Pharmacy Committee") in order to renew Mr. Choquette's gabapentin treatment.  In her request, Ms. Phillips documented that Mr. Choquette had multiple sclerosis, that he had been taking gabapentin at 800 mg "TID" (three times per day), the anticipated length of his treatment was "lifelong," he was experiencing chronic pain, he sometimes needed a wheelchair, and that he had been "seen by Dr. Chung on 11/7/2013 who recommended increasing Gabapentin to 1200 mg TID."

3.14   But instead of approving the increase recommended by Dr. Chung, or even renewing Mr. Choquette's gabapentin prescription at the old dose, the Pharmacy Committee (acting through its chair or designee Defendant Cris Duvall) denied the request entirely.  The committee gave no reason for the denial, writing only: "Clinical observation and management without gabapentin is recommended.  Consider baclofen dose increase to max of 150 mg/day (divided doses)."  The denial by Defendant Duvall and the Pharmacy Committee, which includes the request from PA-C Jo Phillips, is attached as **Exhibit C.**

3.15   Defendant Cris Duvall, Pharm D., either chaired the Pharmacy Committee meeting at which Mr. Choquette's gabapentin treatment was denied, or she made the decision to deny Mr. Choquette's treatment herself as the designee of the Pharmacy Committee, and she signed the denial.

3.16   Defendant Hayes designated and authorized Defendant Duvall to respond to Non-Formulary Requests and deny Mr. Choquette's treatment over the recommendation of a treating physician.

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 4

No. 3:15-cv-05838-BHS-JRC

jg298002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

3.17    Defendant Duvall and any other pharmacists on the Pharmacy Committee unreasonably relied on their own inferior education and experience over the recommendation of Mr. Choquette's treating neurologist Dr. Chung.

3.18    Baclofen treats spasticity, not neuropathic pain, and it is not a medically acceptable substitute for gabapentin to treat neuropathic pain.

3.19    Discontinuing Plaintiff's treatment with gabapentin was medically unacceptable and in doing so Defendants disregarded the known excessive risk to his health by stopping his gabapentin treatment without any effective substitute treatment for his neuropathic pain.

3.20    Defendant Duvall's and the Pharmacy Committee's decision to discontinue Plaintiff's medication was made based on a policy, practice, or custom of refusing to treat neuropathic pain with gabapentin, or refusing to treat neuropathic pain altogether, rather than for reasons related to Plaintiff's medical needs.

3.21    By stopping Plaintiff's treatment for severe pain from his very serious, degenerative condition, against the recommendation of a treating neurologist, whose opinions the Defendants did not have the education or experience to refute, the Defendants showed deliberate indifference.

3.22    On December 6, 2013, Plaintiff timely filed a Level I grievance.

3.23    As the DOC tapered him off his medication, Plaintiff's nerve pain and spasms became such a problem that he was forced to quit his job in the unit pantry.

3.24    On December 25, 2013, the DOC denied his Level I grievance.

3.25    In response, the next day (December 26, 2013), he timely appealed the denial to Level II.

3.26    Based on Mr. Choquette's worsening pain after Defendants stopped his gabapentin treatment, his treating medical provider, PA-C Phillips, went back to the Pharmacy Committee with another request to approve his gabapentin prescription. **Exhibit D.**

3.27    Treating provider Phillips wrote in her request that Plaintiff had been on gabapentin "since before DOC," that he "has been tapered off Gabapentin with negative effects,"

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 5

No. 3:15-cv-05838-BHS-JRC

jg298002

that Plaintiff "is in pain all of the time," "experiencing nausea which he relates to the constant pain," and "had to quit his job," and that "[r]ecommendations for controlling pain have been followed without any benefit." She concluded her request by writing: "In light of the patient's losing the ability to work, and a neurology consult recommending an increase in Gabapentin, I am requesting a new review of this patient's NFR. He does not have a history of abuse, or re-directing." *Id.*

3.28    But despite this knowledge that stopping Mr. Choquette's gabapentin treatment was causing him severe pain, that the baclofen substitute was not working, and that his treating neurologist had recommended an increase in gabapentin, the Pharmacy Committee, acting through Defendant Michelle Southern, Pharm. D. as its chair or designee, again denied his prescription on January 7, 2014. *Id.* Defendant Southern signed the denial.

3.29    This time, Defendant Southern and the Pharmacy Committee—for this decision made up of pharmacists, not medical doctors—essentially overrode Dr. Chung's medical judgment, writing that "Per Clinical Pharmacology" (presumably a publication) "the only off-label use of gabapentin in multiple sclerosis has been limited to treatment of nystagmus" (involuntary side-to-side rapid eye movement) and "small case studies" for pain, which Defendant Southern and the Committee believed "do not substantiate sufficient clinical evidence for high dose use of gabapentin." *Id.*

3.30    Defendant Hayes designated and authorized Defendant Southern to respond to Non-Formulary Requests and deny Mr. Choquette's treatment over the recommendation of a treating physician.

3.31    In fact, the use of gabapentin for neuropathic pain in MS is widely accepted by physicians and pharmacists and was well known at the time.

3.32    The decision of Defendant Southern and the Pharmacy Committee unreasonably relied upon the inferior opinions of non-specialized, non-treating medical providers rather than the recommendations of Mr. Choquette's treating providers and specialists.

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 6

No. 3:15-cv-05838-BHS-JRC

jg298002

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

3.33    The decision to rely on these inferior opinions was based on a policy, practice, or custom of denying gabapentin for nerve pain, or denying treatment for nerve pain altogether, rather than for reasons related to Mr. Choquette's medical needs.

3.34    The decision to continue denying Mr. Choquette treatment with gabapentin, with knowledge that discontinuing it had caused him wanton and unnecessary pain, was medically unacceptable and deliberately indifferent.

3.35    Ten days later, on January 17, 2014, two of Mr. Choquette's treating providers, PA-C Phillips and James Edwards, M.D., submitted a request that the DOC Care Review Committee ("CRC") determine the medical necessity of treating Mr. Choquette's neuropathic pain caused by MS.  The request was marked "Urgent." *See* **Exhibit E**.

3.36    PA-C Phillips wrote to the CRC that Mr. Choquette "[h]as been on Gabapentin for many years to control neuropathic pain associated with MS," but that his "[m]ost recent NFR renewal was denied."  She explained that Mr. Choquette "has complained of increased pain and had to quit his job as a result of the amount of pain that he is experiencing," and that Dr. Chung, plaintiff's neurologist, "states that neuropathic pain is part of MS and recommended in November that his Gabapentin be increased."  She requested a "determination for treatment of neuropathic pain secondary to MS."

3.37    PA-C Phillips presented her request to the CRC on January 29, 2014.  **Exhibit F.** The CRC Report documented the information provided by PA-C Phillips as noted above, along with acknowledging that Mr. Choquette was "experiencing [symptoms] of chronic MS" and that "Custody reports he doesn't go to yard and had quit his job."

3.38    The CRC report described the "intervention proposed" by PA-C Phillips as "Determination medical necessity for treatment of neuropathic pain secondary to MS."

3.39    Despite the knowledge that gabapentin had previously controlled Mr. Choquette's neuropathic pain, that removing gabapentin had caused him a severe increase in pain, and that his treating specialist had recommended increasing his gabapentin dose, the CRC, chaired by

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 7

No. 3:15-cv-05838-BHS-JRC

jg298002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Defendant CMO Hammond, denied Plaintiff's request. *Id.* The CRC decided that it was "NOT medically necessary" to treat Mr. Choquette's neuropathic pain.

3.40    The CRC gave no rationale for this conclusion, writing only that the case had been "discussed by the group" and they had discussed "general neurology versus following with MS specialist," a topic unrelated to treating Mr. Choquette's pain. The CRC did not suggest any alternative treatment.

3.41    As Chief Medical Officer, Dr. Hammond not only oversees the Committee but also has the authority, and responsibility, to reverse CRC decisions that deprive prisoners of necessary medical care and to direct that prisoners receive such care. But Defendant Hammond did not do so.

3.42    None of the participants of the Care Review Committee were neurologists, and none of the Defendants have ever examined Plaintiff.

3.43    The decision of the Care Review Committee unreasonably relied upon the inferior opinions of its non-specialist, non-treating members rather than the recommendations of Plaintiff's treating specialist and primary care providers.

3.44    The decision of the Care Review Committee that treatment of neuropathic pain is medically unnecessary was medically unacceptable and deliberately indifferent to Mr. Choquette's serious medical need.

3.45    The decision of the Care Review Committee was based on a policy, practice, or custom of denying treatment for neuropathic pain rather than Mr. Choquette's medical needs.

3.46    On January 29, 2014, DOC denied Plaintiff's Level II grievance.

3.47    In Response, the next day (January 30, 2014), he timely appealed to Level III, after which he filed a tort claim on February 1, 2014.

3.48    By this time, Plaintiff was in even more pain and having a very hard time functioning. Between mid-December 2013 and February 5, 2014, he filed nine (9) medical kites requesting help.

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 8

No. 3:15-cv-05838-BHS-JRC

jg298002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

3.49    On February 6, 2014, Mr. Choquette's treating physician Dr. Edwards requested that he be evaluated by the multiple sclerosis clinic at the University of Washington in Seattle. This request was approved.  **Exhibit G**.

3.50    The DOC then transferred Plaintiff from Washington State Penitentiary on February 12, 2014 for his medical appointment.  Plaintiff was supposed to be transferred by car directly to Washington State Reformatory (WSR) in Monroe, Washington, but instead the DOC transferred him to Washington Correctional Center (WCC) in Shelton, Washington, where he stayed for one full week waiting for the next bus to WSR.

3.51    When he finally reached his destination, the hospital at WSR, it was too late for the DOC to confirm his appointment with the specialist at the University of Washington MS clinic.  As a result of the DOC's delay in transporting him, his appointment was cancelled.

3.52    Since WSR has no closed custody, which was at the time Plaintiff's custody level, the DOC confined him in isolation at the WSR hospital with no contact with other inmates and no access to his personal property, including legal work for which he had deadlines to meet, for three months.

3.53    What yard time he was allowed took place in a small area, again alone.  And as a result of his untreated symptoms and condition, he rarely was able to participate in that activity. The spasms and extensive nerve pain that he was suffering made even reading impossible.

3.54    It took the DOC three (3) months to reschedule his appointment with the specialist, get MRIs, and transfer him back to the Washington State Penitentiary via Shelton.

3.55    During those months, Defendant Bovenkamp denied Mr. Choquette's Level III grievance on March 21, 2014.  Defendant Bovenkamp wrote: "There is no evidence that you are being denied care that is medically necessary as defined in the DOC Offender Health Plan.  It appears your providers are following the DOC Offender Health Plan guidelines for use of gabapentin." **Exhibit L**. At this point, Mr. Choquette had exhausted the grievance process.

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 9

No. 3:15-cv-05838-BHS-JRC

jg298002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

3.56    Defendant Bovenkamp's decision was based on a policy, practice, or custom of denying treatment for neuropathic pain or denying treatment for neuropathic pain with gabapentin rather than on Mr. Choquette's medical needs.

3.57    Defendant Bovenkamp's decision unreasonably relied on the inferior opinions of non-specialist, non-treating DOC employees rather than Mr. Choquette's treating specialists and primary care providers.

3.58    Defendant Bovenkamp disregarded the known excessive risk to Mr. Choquette's health from failing to treat his severe pain and thus acted with deliberate indifference.

3.59    At that point, Plaintiff had fully exhausted the DOC's grievance process.

3.60    On March 25, 2014, the State denied his tort claim.

3.61    On April 17, 2014, Plaintiff was finally able to see the neurologist and multiple sclerosis specialist, Ann Wundes, M.D., at the University of Washington Multiple Sclerosis clinic in Seattle.

3.62    Dr. Wundes conducted an in-depth exam that took over 2½ hours.  Her report is **Exhibit H**.  She documented numerous consequences from Mr. Choquette's neuropathic pain, including that he experienced fatigue because his "[b]ody cannot get past the pain, mind never shuts down," and that "current amount pain and spasticity interfere with sleep."  She described his neuropathic pain as consistent with MS.

3.63    Dr. Wundes recommended that Mr. Choquette restart gabapentin, "which is standard treatment."  She noted that "though gabapentin [is] primarily provided for neuropathic pain it indeed also helps with spasticity."  Dr. Wundes agreed with Dr. Chung's previous recommendation and prescribed gabapentin at 3600 mg per day.

3.64    On April 23, 2014, at the recommendation of Dr. Wundes, Plaintiff's medical provider at the WSR hospital, Dr. Castilla, began tapering Mr. Choquette back onto gabapentin.

3.65    But on the same day, April 23, 2014, Plaintiff's request for gabapentin was brought before the Care Review Committee again, together with Dr. Wundes's report and recommendations and a description of his condition and the symptoms he was experiencing.

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 10

No. 3:15-cv-05838-BHS-JRC

jg298002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Once again, the CRC, chaired by Defendant Hammond, denied the request. **Exhibit I** is the Committee's Report on its decision.

3.66    The CRC Report contains numerous statements that misrepresent Dr. Wundes' evaluation, Mr. Choquette's medical needs, and his medical history.

3.67    Although Dr. Wundes made clear she was prescribing gabapentin for neuropathic pain, which was severe and consistent with MS, the CRC Report states that it was prescribed because "[t]he patient reported increased spasticity since he discontinued gabapentin." The report acknowledges that the CRC had "previously denied" gabapentin when "it was thought to be for neuropathic pain," reiterating the position that treating Mr. Choquette's pain was medically unnecessary.

3.68    The report states, "[n]ot sure why we would prescribe anything for spasticity when he shows no objective signs, only very mild in calves and upper extremity," despite documentation from Dr. Wundes that spasms were a "daily constant problem" and bad enough to interfere with Mr. Choquette's sleep.

3.69    The report states that Mr. Choquette "is still very functional" without gabapentin, despite the repeated documentation from multiple sources of pain severe enough to make him quit his job, refrain from going to the yard, prevent him from reading, and interfere with his sleep.

3.70    The report states that Mr. Choquette "has a hx of poly-substance abuse," despite the earlier statement from PA-C Phillips that he "does not have a history of abuse, or re-directing."

3.71    The decision of the Care Review Committee unreasonably relied upon the inferior opinions of non-specialized, non-treating medical providers rather than the recommendations of Mr. Choquette's treating providers and specialists.

3.72    The decision to rely on these inferior opinions was based on a policy, practice, or custom of denying gabapentin for neuropathic pain or denying treatment for neuropathic pain altogether rather than for reasons related to Mr. Choquette's medical needs.

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 11

No. 3:15-cv-05838-BHS-JRC

jg298002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

3.73    The decision to continue denying Mr. Choquette treatment with gabapentin despite the knowledge of his wanton and unnecessary pain was medically unacceptable and deliberately indifferent.

3.74    As a result of the decision of the Care Review Committee chaired by Defendant Hammond, Dr. Castilla was forced to stop giving Plaintiff his prescription for gabapentin, causing Plaintiff additional wanton and unnecessary pain.

3.75    Dr. Castilla contacted Dr. Wundes via email about this turn of events.  **Exhibit J.**

3.76    Dr. Wundes responded with a pointed declaration that the DOC's decision was medically unacceptable, and she identified gabapentin as the most common, most prescribed nerve pain medication by neurologists:

> [Mr. Choquette] asks for what *every* neurologist treating MS or neuropathy greatly prefers and prescribes in patients with neuropathic pain which is a *very, very common s[ymptom]* in MS and often can be disabling pain.  Gabapentin is the *most commonly used* agent for this symptom and is not associated with tolerance or addiction risk.  Often patients with MS need rather high doses and/or alternative other (and more costly) agents like pregablin or antidepressants like Cymbalta.  Gabapentin in this situation is a standard approach – esp if we already know its working whereas with every other alternative agent you would run the risk in an individual patient that you cannot predict if working or not and whether side effects or not.  If I recall correctly, instead baclofen was increased which is actually NOT a replacement of gabapentin but as my note outlines spasticity can worsen with discontinuation of gabapentin for 2 reasons: a) actually gabapentin has some impact on spasticity as well and b) spasticity is worse when in pain.
>
> As with pain of other etiology, there is no "objective" test for the degree of neuropathic pain MS patients have by the pure nature of this symptom but again it is a *very common and often disabling* MS symptom.  The amount of neuropathic pain also does not at all correlate with the degree of physical disability.  I not at all doubt the presence of Mr. Choquette's pain.
>
> I appreciate that you asked for approval of gabapentin for this patient.  I am afraid though that *their response demonstrates that they are not really at par with standard medical MS management.*

**Exhibit J** (emphasis added).

3.77    Dr. Wundes copied Defendant Hammond on this email, who then agreed that Dr. Castillo should present the case again to the CRC, acknowledging that although he disagreed

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 12

No. 3:15-cv-05838-BHS-JRC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

jg298002

with "some" of Dr. Wundes's opinions, "I will grant that she is the expert in evaluating and managing MS."

3.78    Dr. Wundes's remarks show that Defendants' repeated decisions to deny Plaintiff his medication were medically unacceptable and made with deliberate indifference.

3.79    As a result, on April 29, 2014, Dr. Castilla again presented Plaintiff's request for gabapentin with the same information as presented previously.  After five (5) months of denying Plaintiff this medication, the Care Review Committee finally approved his request, deciding for the first time that "treatment of neuropathic pain and spasms secondary to multiple sclerosis" was in fact medically necessary.  **Exhibit K**.  Dr. Castillo then began administering gabapentin to plaintiff.

3.80    On May 19, 2014, Plaintiff was transferred from WSR to Shelton and then on May 21, 2014 back to the Washington State Penitentiary.

3.81    Plaintiff's isolation at WSR lasted from February 18, 2014 to May 19, 2014.

## IV.    INJUNCTION ALLEGATIONS

4.1    Defendants' policy (the DOC Pharmacy Formulary) still lists gabapentin as non-Formulary and as only an anti-convulsant, requiring special approval even for that use.

4.2    Defendants' Formulary policy still requires that all requests for gabapentin be reviewed on an annual basis for renewal or denial.

4.3    Defendants' Formulary policy designates DOC pharmacists to decide whether gabapentin is medically necessary for prisoners, including Plaintiff (and others), who suffer a lifelong degenerative disease with symptoms of intractable pain and spasticity or similarly serious chronic symptoms.

4.4    During the annual review of Plaintiff's request for renewal of gabapentin, Defendants repeatedly and arbitrarily denied renewal of his treatment with gabapentin, contrary to the standards for treating pain and spasticity symptoms of his multiple sclerosis diagnosis and contrary to the explicit recommendations of two specialists (neurologists).

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 13

No. 3:15-cv-05838-BHS-JRC

jg298002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.5     In light of the fact that under their own policy, practices, and customs, Defendants' approval of Plaintiff receiving gabapentin is only temporary and will be reconsidered annually through the same flawed process and subject to the same disregard of his specialists' recommendations, there is no adequate remedy at law.  Plaintiff is entitled to injunctive relief prohibiting Defendants from again denying Plaintiff the medical care recommended by his neurologists.

**V.     CLAIM AND REQUEST FOR RELIEF**

WHEREFORE, plaintiff requests the following relief:

5.1     For a declaration, under 42 U.S.C. § 1983, that Defendants' conduct violated the Eighth Amendment to the United States Constitution;

5.2     For an injunction, under 42 U.S.C. § 1983, to stop Defendants' illegal conduct and prevent it from occurring again in the future;

5.3     For general compensatory damages, under 42 U.S.C. § 1983, in an amount to be proven at the time of trial;

5.4     For punitive damages, under 42 U.S.C. § 1983, in an amount to be proven at the time of trial;

5.5     For plaintiff's costs of suit, disbursements, and attorney's fees as authorized by 42 U.S.C. § 1983 and 42 U.S.C. § 1988;

5.6     For leave to conform the pleadings to the proof at trial; and

5.7     For such other and further relief as the Court deems just and proper.

DATED this 20th day of October, 2016.

MacDONALD HOAGUE & BAYLESS

By:     */s/ Jesse Wing*
        Jesse Wing, WSBA # 27751
        JesseW@MHB.com

By:     */s/ Tiffany Cartwright*
        Tiffany Cartwright, WSBA #43564
        TiffanyC@MHB.com

        Attorneys for Plaintiff

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 14

No. 3:15-cv-05838-BHS-JRC

jg298002

**MacDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of October, 2016, I filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

**Attorney for Defendants DuVall, Hammond, and Southern:**

Aaron M. Williams, WSBA #46044
Assistant Attorney General
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
Phone:  360- 586-1445
Email: AaronW@atg.wa.gov; YekaterinaB@atg.wa.gov


/s/ Esmeralda Valenzuela
Esmeralda Valenzuela, Legal Assistant
esmeraldav@mhb.com

THIRD AMENDED CIVIL RIGHTS COMPLAINT - 15

No. 3:15-cv-05838-BHS-JRC

jg298002

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

## Exhibit A

to

Third Amended Complaint

ETIENNE CHOQUETTE [12/14/1963] [509-999-9999]
Adventist Health Medical Group

## Dictation and Reports

345717

Irology Consult                                                                                    11/07/2013

Received

NOV 14 2013

Medical Records

| | |
|---|---|
| Patient Name: CHOQUETTE, ETIENNE | Type: New Patient |
| DOB: 12/14/1963    AGE: 49 | Opened: 11/07/2013 07:32 |
| Provider: Stephen S. Chung, MD | By:   Kenna M. Wolfinbarger, MA |
| Date of Service: 11/07/13 | Close:   11/10/2013 12:31 |
| Type of Service:  Office Consultation | By: Stephen S. Chung, MD |
| Note Type: Neurology Consult | History Source: Patient |

**CHIEF COMPLAINT:**
Mr. Choquette presents for a new neuro conuslt regarding MS, Ref by Dr. John Smith, PCP @ WSP.

**HISTORY:**
The patient is a 49-year-old right hand dominant Caucasian male who was diagnosed with multiple sclerosis in 2009 by Dr. Ketan at Virginia Mason prior to his incarceration in September of 2009.  The history is taken from the patient as well as review of Dr. John Smith, medical office note dated September 17, 2013 and Dr. John Chapin note dated May 8, 2012.  I do not have any records from Virginia Mason. Apparently he was diagnosed with multiple sclerosis based on MRI of the brain and cervical spine MS plaque noted at C-3 level and new plaque found on C-7 level as well as in the left parietal area.  MRI if the lumbar spine at that time revealed disc extrusion at L5, S1 to the right with impingement on the right S1 nerve root.  Thoracic spine imaging apparently revealed no lesions.  He was initially started on Copaxone but he was switched to Avonex as that was the only disease-modifying therapy available in the Washington State Penitentiary.

Prior to that the patient states that he was using a scooter on and off starting in 2005 because of the lower extremity weakness.  The last time he used this scooter was in 2009.  Since that time he has been able to walk.

The patient is referred to me for evaluation of complaint of sensory change on the left side of his body and extremities starting several months ago. He states that it began near his navel area that wrapped around to the lower back then spread to the rib cage and to the groin area and then later to armpit and the left thigh over 3-6 weeks.  The left thigh numbness and tingling is intermittent now.  He has not had significant change to his gait; although occasionally he feels muscle spasm that bothers him.  He complaints of having "microspasms" in his legs, worse on the right side.  He described involuntary small amplitude progressing knee flexion followed by a sudden extension of the knee jerk.

He also complains of having "random sharp pain anywhere in my body."  He feels like bugs are crawling on his skin on occasion.

He has no overt urinary incontinence although he complains of having urinary frequency.  He has occasional dribbling after emptying his bladder.

**MEDS/ALLERGIES:**
MEDICATIONS:
Omeprazole 20 mg delayed release capsule 1 cap(s) PO once a day
interferon beta-1a 30 mcg/0.5 mL kit 1 IM 1X/W
diphenhydrAMINE 25 mg capsule 1 capsule po once a week with Avonex injection
ziprasidone 80 mg capsule 1 cap(s) PO once a day
Acetaminophen 500 mg tablet 1 tablet po q week with Avonex injection
Naproxen 500 mg tablet 1 tab(s) PO QDPC
Acetaminophen/Aspirin/Caffeine 250 mg-250 mg-65 mg tablet 2 tablet po qd prn migraine
ziprasidone 20 mg capsule 1 cap(s) PO BIDPC
LamoTRIgine 200 mg tablet 1 tab(s) PO BID
sertraline 100 mg tablet 2 tab(s) PO once a day
busPIRone 15 mg tablet 2 tab(s) PO TID

FJS

[This report is continued on the following page]

11/11/2013 02:43 PM

ETIENNE CHOQUETTE [12/14/1963] [509-999-9999]                                              Page 2 of 5

ETIENNE CHOQUETTE [12/14/1963] [509-999-9999]                              Page 3 of 5
Adventist Health Medical Group

## Dictation and Reports [Continued]

urology Consult [Continued]                                                 11/07/2013

Simvastatin 20 mg tablet 1 tab(s) PO once a day
metoprolol 25 mg tablet 1 tab(s) PO once a day
Baclofen 20 mg tablet 1 1/2 tablets po bid
Gabapentin 600 mg tablet 2 tab(s) PO BID
&nbsp
**PROBLEM LIST:**
CHRONIC:
UNKNOWN Multiple Sclerosis / MS
UNKNOWN Benign essential hypertension
UNKNOWN GERD
**SOCIAL HISTORY:**
Smoking Status:  Unknown if ever smoked.
**VITALS:**
**11-07-2013 08:07Weight**: 245 lbs**BMI**: 36.2**Pulse**: 60 BPM**BP**: 118 / 72   [lue - sit] **Resp**: 16 /
min [unlab]**Height**: 69.0 in**Pain**: 6 of 10
**Comment**: Fall Risk Screen

History of falling:
Immediate or within 3 months?
No

**EXAM:**
GENERAL APPEARANCE - Well nourished and well developed..

HEAD - Normocephalic and atraumatic.

CONJUNCTIVA-LIDS - Sclera and conjunctiva without injection and non-icteric..

LUNGS - Normal breath sound throughout. No wheezes or rhonchi..

BREATHING PATTERN - Normal inspiration and expiration pattern.

HEART SOUNDS - Regular rhythm and rate. No murmurs. No extra heart sounds..

EXTREMITIES - No clubbing, cyanosis, or edema.

MENTAL STATUS - Affect is normal, mood congruent.

MENTAL STATUS EXAMINATION - Alert and oriented to time, place, person, and
situation.  Normally attentive. Speech is normal. Memory is intact to recent and remote
events..

CRANIAL NERVE EXAM
CN II (Optic) - visual acuity is grossly normal. Visual fields full to confrontation and
Fundoscopic exam demonstrated normal disc margin, cup to disc ratio, without pailledema.
Vessels surrounding the optic disc was normal.
CN II-III (pupil, eye lid opening) - The pupils are round and responsive to light
with  direct and consensual response.
CN III-IV-VI (Extraocular movements) - Extraocular movements are full without
pathological nystagmus.
CN V (Trigeminal) - Sensory division 1 - 3 examination by pinprick and light touch was
normal.
CN VII (Facial) - There is symmetrical eye brow raising and  retraction of mouth..
CN VIII (Auditory) - Hearing is moderately reduced by finger rubbing.
CN IX-X (Glossopharyngeal and Vagus) - The soft palate and uvula are midline.
CN XI (Accessory) - There is symmetrical shoulder shrug and  sternocleidomastoid

[This report is continued on the following page]

ETIENNE CHOQUETTE [12/14/1963] [509-999-9999]                                        Page 4 of 5
Adventist Health Medical Group

# Dictation and Reports [Continued]

urology Consult [Continued]                                                              11/07/2013

strength.
CN XII (Hypoglossal) - Tongue protrudes midline.

MOTOR EXAM
Muscle tone - Muscle tone is increased, in the upper extremity, on the right side and
with mild degree.
Muscle bulk - normal throughout.
Strength - is normal throughout.
Walking on toes - is normal.
Walking on heels - is normal.

COORDINATION
Finger-Nose-Finger test - normal.
Rapid Alternating Movement - finger tapping is and normal bilaterally.

GAIT AND STATION
Posture - is normal.
Station - rising from chair - normal without difficulty.
Station - normal stability.
Gait - Normal.
Romberg test - is negative.

SENSORY EXAMINATION
Pinprick sensation - reduced, in the upper extremity, in the lower extremity and on the
left side.
Vibratory sensation - is mildly reduced in the toe and bilaterally.
Detail - Subjectively reduced vibration sensation 5 seconds on left and 8 seconds on
right at the great toes..

DTRS
Grade - 2+ throughout. No ankle clonus.

BABINSKI SIGN - is absent.

ASSESSMENT:

340                     Multiple Sclerosis / MS                          New Problem

COMMENT:
The patient's neurological examination is essentially normal except for subjectively
reduced pinprick sensation over the left upper and lower extremities.  However, his gait
appears normal. He is able to walk on his toes and heels without difficulty.  Tandem gait
for two steps was unremarkable.  However, the patient stopped stating that he is not able
to perform tandem gait. Romberg testing was negative. His strength was normal. There is
subtle increase in muscle tone in his left upper extremity, but otherwise he has normal
muscle tone.  There was no evidence for optic neuritis on funduscopy examination.  His
cognitive functioning appears intact.  He is able to recall the date of his incarceration
and the name of his previous neurologist.  He is able to recount his recent symptoms
without much difficulty.  He does have mild reduced hearing loss which is chronic.

Based on my examination, I do not feel that the patient has a multiple sclerosis
exacerbation.  It appears that he remains stable on Avonex injection for multiple
sclerosis.

However, he is experiencing chronic symptoms of multiple sclerosis primarily of muscle
spasticity and neuropathic pain.

[This report is continued on the following page]

ETIENNE CHOQUETTE [12/14/1963] [509-999-9999]
Adventist Health Medical Group

## Dictation and Reports [Continued]

rology Consult [Continued]                                    11/07/2013

For the muscle spasticity/muscle spasm, baclofen may be increased to 30 mg three times a day. For the neuropathic pain, the gabapentin may be increased with addition of 600 mg in the midday and consider increasing to 1200 mg three times a day thereafter.

I would recommend that he continue on Avonex, once a week injection, at 30 mcg.

I did not feel that there is a need for repeat MRI imaging at this time as the patient appears to be clinically stable.

My impression and recommendations were discussed with the patient.

DD: 11/7/13   SSC
DT: 11/8/13   skn

Signed off by: Stephen S. Chung, MD On: 11/10/13 at 12:31

Author: Stephen S. Chung, MD

11-14-13

ETIENNE CHOQUETTE [12/14/1963] [509-999-9999]

17

## Exhibit B

to

Third Amended Complaint

# WA DOC PHARMACEUTICAL MANAGEMENT and FORMULARY MANUAL

Approved by:
The Chief Medical Officer
Washington State Department of Corrections



Note: Appendices II – Formulary Drug Listings and IV – Alternate Choices for Non-formulary Medications may be updated frequently as clinical data or contract prices change.

Page 1 of 168

DEFS010442

# Section I

**Purpose**

The Pharmacy and Therapeutics Committee is a committee of health care practitioners and pharmacists established to manage medication utilization within the Department of Corrections (DOC) in accordance with the Offender Health Plan (OHP). To achieve this goal, all aspects of medication utilization may be scrutinized including, but not limited to:

- Development and maintenance of a formulary
- Development and review of treatment guidelines, protocols, forms, and algorithms prior to implementation to assure consistency with the DOC Formulary document
- Physical management of pharmaceuticals
- Inventory standardization through formulary compliance
- Therapeutic Interchange when possible
- System wide prescription validity and transportability of medication
- Standardization of medline and issuable medications
- Selection, utilization and availability of OTC medications

The guiding principle in decision making will be to enhance patient care and ensure the safety of those receiving drug treatments. The best available evidence based scientific data will be incorporated in the decision process to maintain clinical relevance.

Where other reputable bodies (for example Washington State P&T Committee) have evaluated data and made recommendations, these recommendations will be considered for incorporation in the DOC P&T guidelines.

Practitioners and nurses provide most patient care at the unit level. Pharmacists and pharmacy technicians assist in this care by assuring efficient use of pharmaceuticals. The overall goal of the Pharmacy and Therapeutics (P&T) Committee is to assist practitioners in providing comprehensive, quality, timely and cost effective care to patients by clearly communicating scientifically sound medication practices and creating the infrastructure necessary to implement these practices system wide.

DOC Formulary document is available on the Health Services website, DOC Internet, and may be available in facilities' libraries.

DEFS010448

# Section II

**Promulgation of Policy**

As described elsewhere in this document, the P&T Committee may develop recommendations on a variety of pharmaceutical related issues including changes to this document, procedures, forms, operations, policy, legislation et al. The P&T Committee will seek input from all DOC stakeholders then draft recommendations that will subsequently be forwarded to the DOC Chief Medical Officer (CMO) for final approval. Healthcare providers are expected to comply with the formulary and earnestly consider treatment guidelines when treatment decisions are made. The CMO or designee may grant exceptions to these procedures. The CMO and Director of Pharmacy and/or designees may edit formulary language to reflect the intent of P&T Committee decisions when there is no change in essential content. Any edit will require CMO approval and the chairperson will notify Committee members.

# Section III

**Voting Members**

The committee shall consist of an interdisciplinary team of health-care professionals, that will include (but not limited to) the DOC Director of Pharmacy (Chair), physicians, dentists, pharmacists, physician assistants and advanced registered nurse practitioners. The CMO is considered a voting member.

The P&T chairperson and/or CMO will appoint all members to a renewable two-year term. The committee may solicit new members each year. Staff may volunteer for committee duty but must accept an appointment if so assigned. The committee chairperson may revoke membership status if a member misses 1 in person or 2 teleconference meetings with in a year without a justifiable excuse or a request to be excused.

Members must be actively involved in patient care and should be familiar with the OHP, DOC Policy and DOH Standards.

Disclosure of potential conflicts of interest (for example, employment by a pharmaceutical industry company, participating as an investigator in a drug trial study or holding financial interest greater than $10,000 in a company that produces or distributes a medication or device under consideration) is an ongoing mandatory requirement.

Members must comply with relevant Washington State law, WAC's, DOC Policy and Procedures regarding the receipt of any gratuity from an outside organization during their tenure on the committee. Specifically, members may not accept any meals, office supplies or other gifts regardless of value from any representative of a company that manufactures or distributes a medication or device.

Member back-ups will be considered voting members only when they are functioning as the alternate to the voting member.

DEFS010450

# Section IV

**Consultants/**
**Guests**

At the discretion of the chairperson, DOC and non-DOC persons with appropriate expertise may be asked to attend P&T Committee meetings and/or provide input to the committee. Unless determined by the chairman to be a closed or confidential meeting, any DOC staff member is welcome to attend P&T Committee Meetings.

Individual P&T members have the authority to request expert advice from Subject Matter Experts (SME) or consultants as necessary. This request shall be routed through the committee chairperson.

Formulary
Washington Department of Corrections (January 2016)

DEFS010451

# Section V

**Meeting Operations**

The P&T Committee shall meet in person quarterly. If there is a need for the committee to meet more often it will be arranged through teleconference and WebEx.

To transact business, a quorum of more than half the members (including the Chairman/designee) must be present. Should a quorum not be present, the only committee business that may be transacted is to take measures to obtain a quorum, to fix the time at which to adjourn, to adjourn or take a recess. If the meeting cannot take place because of a lack of quorum, the Chairman will reschedule the meeting as soon as is mutually agreeable to the members. The minutes of each meeting shall be read and approved only by Members in attendance at that meeting.

Individuals who request to add topics to the P&T agenda must provide adequate reference material and appropriate presentation details to the committee chairperson before the meeting convenes.

Questions placed before the committee for decision will be decided by simple majority vote with the exception of changes to this document, which require two thirds of the votes cast for approval. Should any motion result in a tie vote, the chairman shall cast the deciding vote.

Meetings will be held in person or by teleconference. E-mail meetings are not permitted.

DEFS010452

## Section VI – Medication Categories

**Formulary**

Medications in this category may be prescribed when medically necessary according to the Offender Health Plan (OHP) and require no further approval for use provided the criteria listed in OHP and the formulary are met.

*Restricted Formulary*

Medications in this category are described as medically necessary but restricted to documented failure of a Formulary medication(s) or to certain populations or disease states. Refer to the medication formulary status for specific criteria necessary for approval.

**Procedure:**

- If used according to the criteria (listed under Special Information) in the Formulary, prescribers can order *Restricted Formulary* medications without further approval

- A Non-formulary (DOC Form 13-041) request must be submitted if a *Restricted Formulary* is prescribed and the patient's condition does not meet the approved for *Restricted Formulary* medications criteria as stated in Pharmaceutical Management document.

- Documentation on a Primary Encounter Report (PER) or Inpatient Order form by the prescriber should reflect the reasoning behind the choice of the *Restricted Formulary* medication.

- Pharmacist dispensing the prescription order will be responsible for transferring the reasoning behind the choice to the patient medication profile. The Pharmacist Supervisors will submit quarterly the record to the P&T Committee for retrospective review and CQI purpose.

*Continued on next page*

DEFS010453

## Section VI – Medication Categories, Continued

**Non Formulary**   Medications in this category are not generally prescribed in DOC. They are not medically necessary usually for one of the following reasons:

- Experimental medications or experimental use of medication (unless approved by the DOC Research Committee)
- Medications for which alternative therapeutic modalities may already exist on the P&T approved formulary list
- Medications for which alternative therapeutic modalities may already exist on the P&T approved over-the-counter (OTC) store list
- Medications with the sole purpose of treating conditions recognized in the OHP as not medically necessary
- Brand name medication when a generic product is available within the therapeutic class

**Procedure**:  Prior approval for use of a Non-Formulary medication is required with the following two exceptions:

- Upon admission of a patient to a DOC facility from outside DOC, a Non-Formulary medication may be continued up to 30 days for medical and 60 days for mental health without authorization if:

  – A) the patient arrived on this medication,
    and
  – B) Immediate discontinuation of the medication may be dangerous. The practitioners may use this window to wean, replace or submit a Non-Formulary (NFR) request form for prior approval.

  A 30-day extension at receiving facility to be allowed if inmate transfers from reception center before NFR process is completed. Cross tapering of MH agents for initiation or cessation of therapy is limited to one month.

- When there are multiple anti-infective choices of equal safety and efficacy, the prescriber may consult with the pharmacist to determine the most cost-effective option to use regardless of formulary status. If a patient enters or returns to a facility on a non-formulary anti-infective, the practitioner may continue the medication if deemed necessary, submitting an NFR as soon as possible and/or consulting with an infectious disease specialist to determine an alternative formulary agent.

*Continued on next page*

Page 13 of 168

DEFS010454

## Section VI – Medication Categories, Continued

**Authorization of Non Formulary Medications**

To obtain prior approval for use of a Non-Formulary medication, the practitioner shall submit an electronic copy of DOC form 13-091 to the appropriate venue for consideration. The duration of Non-Formulary prescriptions will be determined on a case by case basis as an integral part of the approval process.

**Pharmacist Evaluation of a Non Formulary Request**

The CMO and Director of Pharmacy will select authorized pharmacists to respond to Non-Formulary requests (NFRs). Authorized pharmacists are P&T Committee designees and are assigned to a particular facility or facilities but may cover NFRs from other facilities when necessary.

**Optimizing Consistency in Response to NFRs:**
1. Newly assigned pharmacists must be oriented and trained by the Director of Pharmacy/designee for at least 3 months. During training, any response from a new pharmacist to NFRs must be evaluated and approved by the Director of Pharmacy/designee prior to sending the response.

2. Pharmacists shall submit a response to NFRs within 2 business days using one of the following responses:
   a. Approved (may have a limited duration).
   b. Pending (more information needed, incomplete request, or if the research may take more than 2 business days, etc.).
   c. Denied (responder shall provide alternative management options or explanation if the therapy is not considered Medically Necessary per the Offender Health Plan).

**Pharmacists shall take the following steps while evaluating NFRs:**
1. Verify if the therapy is medically necessary per the Offender Health Plan (OHP)
   a. If medical necessity is unclear, the pharmacist may consult with the FMD, who may recommend CRC review if needed.
   b. If treatment diagnosis is known to be Level 2, the NFR is referred to CRC.
   c. The NFR will be resubmitted by the requesting practitioner after CRC authorization to treat the condition.
   d. See the WA DOC Pharmaceutical Management and Formulary Manual for emergency use guidelines.

2. Conduct a case evaluation by reviewing:
   a. Patient compliance while on formulary medications
   b. Patient utilization patterns (refill requests, history of medication profile, and past NFRs)
   c. Other underlying medical conditions
   d. Patient safety (risk vs. benefit)

Page 14 of 168

DEFS010455

    e.  Prison security (i.e., would patient be bullied by his/her cellmates to give up or trade non-formulary medication)

3.  Check the patient medication profile to confirm compliance with DOC protocols/guidelines as appropriate.

4.  Verify appropriateness and completeness of clinical evidence that may have been submitted with the NFR.

5.  Research alternative medication therapies from the various resources available to pharmacists

6.  Review cost of alternative medication therapy against the requested non-formulary medication.

7.  Confirm specialist recommendation on non-formulary medication.
    a.  Specialist shall be contacted and advised of suggested formulary or cost-effective alternative medication therapy unless therapeutic interchange is directed by the WA DOC Pharmaceutical Management and Formulary Manual. Any continued disagreement between NFR recommendation and consulting specialist recommendation will be resolved by the FMD with option to refer question to DOC Pharmacy Director and CMO.

8.  Save all NFR responses in the authorized NFR folder as:
    a.  NFR, Medication name (in generic), Diagnosis, Facility abbreviation, Pt. last name, Pt. DOC number, Date of decision, then approved (a), denied (d), or pending (p)
    b.  Example: "NFR gabapentin back pain WCC Doe 123456 10.2.15 (d)"
    c.  Access to the NFR folder will be granted by the Director of Pharmacy

9.  A copy of the response to the NFR must be placed in the legal section of the patient's chart.

**Appeal of a Non-Formulary Decision**

If a practitioner wishes to appeal a Non-Formulary decision, s/he must email their denied submission document to the DOC Director of Pharmacy accompanied by a short explanation of the reason for the appeal. The subject line of the email should read "NFR Appeal". Within five business days, the Director of Pharmacy/designee will convene a telephonic subcommittee meeting with the CMO/designee, Director of Pharmacy/designee (and the Chief of Psychiatry/designee if a mental health drug is involved), the practitioner who submitted the NFR and the NFR reviewing pharmacist. The committee will review documentation relative to the issue and entertain pertinent discussion. The final decision of an appealed Non-Formulary request is made by the CMO in consultation with key stakeholders. The decision will be documented on DOC 13-091 and reviewed by the P&T Committee. Alternately, patients may obtain Non-Formulary medications by complying with the provisions of DOC Policy 600.020 (Offender Paid Health Care).

DEFS010456

**Special Criteria on Therapeutic Class of Medication**

No more than 2 antidepressant medications (regardless of therapeutic class or indication) may be prescribed at one time without Psychiatric CRC approval. If a 3rd anti-depressant is needed the case must be taken to Psychiatric CRC for approval. All new patients admitted to WA-DOC, currently prescribed more than 2 anti-depressants, may continue therapy for up to 60 days as permitted by section VI – Medication Categories Non-Formulary.

Use of antipsychotics for PRN and/or off-label purposes or simultaneous use of more than two of these agents (except for cross taper for up to 30 days) requires NFR submission, unless permitted per approved protocol.

Initiation of Linezolid or a new HIV medication therapy, at DOC, is considered *Restricted Formulary* and requires approval by the DOC infectious disease specialist, CMO, or Pharmacy Director. All newly admitted patients on an antiviral medication will remain on current medications until evaluated by the DOC infection disease specialist or designee.

Anti-neoplastics may be permitted as formulary for continuation of cancer therapy or per specialist recommendation or else it is considered as non-formulary.

**Violator Pharmaceutical Requests**

This section pertains only to patients who are Community Corrections Violators and in custody at a DOC Contracted Violator Facility (Jail). The process described below is for the authorization of reimbursement for medication costs to the Jail and NOT to verify the appropriateness of the medication, dosage, route, etc.

In accordance with the Pre-Authorization and Medical Billing Instructions, reimbursement authorization requests for Non-Formulary and Restricted Formulary Medications shall be processed through the Utilization Management Office. Initial review shall be conducted by a Utilization Management (UM) Registered Nurse. Violator Facility staff will fill out and submit (to the best of their ability) the Non-Formulary Request (DOC Form 13-091) and submit to the UM Office via fax or e-mail. A call may be made to the Nurse Desk line, provided the pertinent information is reported.

Authorizing authority is granted by the CMO and Director of Pharmacy to the UM Nurses. When the UM Nurse determines that s/he needs consultation regarding an authorization decision, the CMO or Director of Pharmacy, or their respective designees, shall be consulted for authorization of payment.

Similar to medication continuation at DOC Reception Centers, a patient coming from a facility outside DOC (in this case, the community) a "Non-Formulary [or Restricted Formulary] medication may be continued up to 30 days for medical and 60 days for mental health". This applies if the patient arrived on these medications or returned from a DOC

Page 16 of 168

DEFS010457

authorized clinic appointment or notified ER visit with orders for these medications.

The processing UM Nurse shall:

- Review DOC Custody status
- Research Sanction Release Date (SRD) or scheduled hearing date
- Review any submitted documentation
- Review the current DOC Formulary and/or OHP as needed
- Mark the NFR as approved or denied for payment, for supplies no greater than 30 days
- Consult with the CMO or Director of Pharmacy as needed

After Hours:

When a request for authorization is received outside of normal business hours the on-call UM Nurse may verbally authorize for payment of a Non-Formulary or Restricted Formulary medication.

---

*Continued on next page*

DEFS010458

## Section VI – Medication Categories, Continued

**Off Label Uses**  Off label means the prescribed use of a medication, for the purpose other than stated in its FDA approved labeling. Off label drug use is permitted (with the exception for atypical antipsychotic agents) if the treatment is recognized as effective by one of the following:

- The American Hospital Formulary Service Drug Information

- The American Medical Association Drug Evaluation

- Clinical Pharmacology (http://www.clinicalpharmacology-ip.com/default.aspx)
- The United State Pharmacopoeia Drug Information

- Other authorized compendia as identified from time to time by the Federal Secretary of Health and Human Services or the State Insurance Commissioner

- Any CRC on a case by case basis.

**Emergency Use**  Notwithstanding any of the above utilization guidelines, in emergency, practitioners may prescribe *Restricted Formulary* or **Non-Formulary** medications, which the practitioner judges to be medically necessary in a particular circumstance.

Emergency means that a significant risk to patient safety is present and time does not permit utilization of the authorization procedures described herein.

The duration of emergency use should be no longer than necessary to gain approval through one of the processes described elsewhere in this document.

**OTC Medications**  All previous formulary OTC medications that are listed in the OTC policy and are now available in the store will be moved to *Restricted Formulary* status effective June 15th 2009. They can be ordered only if medically necessary AND approved by the facility medical director OR pharmacy supervisor. Pharmacy will continue refilling previously ordered OTC items that are active and refillable for one month between June 15th and July 15th 2009 to help with the transition process

Pharmacy in collaboration with FMDs will develop a standard set of criteria for approved "medical necessity" uses of OTC medication and available on DOC–HS website

DEFS010459

| Drug Name Generic names in BOLD | Formulary Status | Special Criteria | AHFS | Issue/ Medline |
|---|---|---|---|---|
| **Folic Acid** | Folvite | Formulary | | AHFS 88:08 Vitamin B Complex | **issue** |
| Folvite | **Folic Acid** | Formulary | | AHFS 88:08 Vitamin B Complex | **issue** |
| **Formoterol/ mometasone** | Dulera | Formulary | | AHFS 12:12 Sympathomimetic agents AHFS 52:08 EENT Anti-inflammatory agents | **issue** |
| Fortaz, Tazidime | **Ceftazidime** | *Restricted Formulary* | Approved based on C&S results and in discussion with a pharmacist (see formulary sectionVI.2) | AHFS 8:12.06 Cephalosporins | **medline** |
| Fosamax | **Alendronate** | Formulary | | AHFS 92:00 Miscellaneous therapeutic agents | **issue** |
| **Fosamprenavir** | Lexiva | *Restricted Formulary* | Approved as continuation therapy. If therapy is initiated at DOC, approval by the DOC infectious disease specialist, Chief Medical Officer, or Pharmacy Director is required. | AHFS 8:18.08.20 Antiretrovirals | **issue** |
| Fungizone | **Amphotericin B** | Formulary **Non-Formulary:** Oral | | AHFS 8:14 Antifungals | **medline** |
| **Furosemide** | Lasix | Formulary | | AHFS 40:28 Diuretics | **issue** |
| Fuzeon (injection) | **Enfuvirtide (injection)** | *Restricted Formulary* | Approved as continuation therapy. If therapy is initiated at DOC, approval by the DOC infectious disease specialist, Chief Medical Officer, or Pharmacy Director is required. | AHFS 8:18.08.04 HIV Fusion Inhibitors | **Medline Only** |
| **Gabapentin** | Neurontin | **Non-Formulary** *(maximum of 1 year NFR approval)* | Refer to Gabapentinoid Protocol for specific criteria. Patients may not receive doses greater than 2400mg/day without specific approval. | AHFS 28:12.92 Anticonvulsants Misc. | **Medline Only** |
| Garamycin | **Gentamicin sulfate** | Formulary | | AHFS 8:12.02 Aminoglycosides | **issue topical** |
| Gaviscon | **Aluminum/ Magnesium /Sodium bicarbonate & Algenic acid** | *Restricted Formulary:* Requires approval by facility medical director or pharmacy supervisor. | | AHFS 56:04 Antacids and adsorbents | **issue** |
| **Gemfibrozil** | Lopid | *Restricted Formulary* | Approved for triglyceride levels greater than or equal to | AHFS 24:06 Anti-lipidemic agents | **issue** |

Formulary
Washington Department of Corrections (January 2016)

DEFS010511

**Exhibit C**

to

Third Amended Complaint



**Department of Corrections**
WASHINGTON STATE

Offender Name: **CHOQUETTE, ETIENNE**
DOC #: **345717**
Date of Birth: **12/14/1963**

## REQUEST TO USE NON-FORMULARY DRUG (NFR)    Facility: WSP

# *DO NOT THIN*

| PRACTITIONER |
|---|

- DIAGNOSIS other than Level I in OHP will require CRC approval prior to submission of NFR.

- NFR will be returned if the answers to questions 1-4 are blank or if insufficient data is provided.

- Fill out NFR electronically and email as an attachment to your local pharmacist designated by P&T Committee.

Generic name: Gabapentin

Brand name(s): Neurontin

Dosage form, strength, frequency: 800 mg TID

Received

DEC 05 2013

Diagnosis(es) relevant to this request: Multiple sclerosis, Chronic back pain/DJD    Medical Records

Anticipated length of treatment: lifelong

1) Previous unsuccessful medication therapies including dosage, frequency, and duration: Has been on Gabapentin 800 TID, Baclofen 20 TID recently increased to 30 TID, Naproxyn 500/Tylenol 500, with Avonex since before DOC. Seen by Dr. Chung on 11/7/2013 who recommended increasing Gabapentin to 1200 mg TID. MRI in 2009 documented findings of right side herniated disc of L5-S1 impinging the nerve root, severe, sharp, piercing pain in right low back that caused him to fall to the ground, thus the need for a wheelchair. he walks limited distances; prolonged walking produces episodic severe back pain, that radiates down anterior thigh and calf of right leg. Assessment: intermittent and possibly continuous radiculopathy.

2) Measures (objective if applicable) used to determine failure of first line agents: On Geodon, Buspar, Lamicatal, and zoloft for MHI, Elavil, Tegretol, and Effexor are contraindicated.

3) Identify the benchmark or baseline (ie: functional deficit, lab values, ADLs, walking distance): uses wheelchair prn exacerbations. Has not needed one since being incarcerated.

4) Identify objective measure or specific goal(s) trying to achieve: ADLs

5) Were relevant protocols, algorithms, or guidelines followed?    ☒ Yes    ☐ No    ☐ N/A

6) Other explanation to support your request: Diagnosed with MS 2009; MVA 2000 -- chronic pain since.

   a) Web address:

   b) Copy attached: ☐                                    COPY

Requested by (include title): Jo Phillips, PA-C    Date of Request: 11/27/2013

| ACTION BY PHARMACY AND THERAPEUTICS COMMITTEE |
|---|
| *A completed copy of this form must be placed in Legal section of patient's health record.* |

A. Action:  Denied

B. Comments: Clinical observation and management without gabapentin is recommended. Consider baclofen dose increase to max of 150 mg/day (divided doses).

C. KOP vs. PLN recommendation:

Chairperson P&T Committee or Designee: Cris DuVall, PharmD    Date of Response: 12/02/2013

State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 13-091 (01/10/2010)                                        LEGAL

20

# Exhibit D

to

Third Amended Complaint


Department of
Corrections

Offender Name: **CHOQUETTE, ETIENNE**
DOC #: **345717**
Date of Birth: **12/14/1963**

## REQUEST TO USE NON-FORMULARY DRUG (NFR)          Facility: WSP

### _DO NOT THIN_

| PRACTITIONER |
|---|
| - DIAGNOSIS other than Level I in OHP will require CRC approval prior to submission of NFR.<br><br>- NFR will be returned if the answers to questions 1-4 are blank or if insufficient data is provided.<br><br>- Fill out NFR electronically and email as an attachment to your local pharmacist designated by P&T Committee. |
| Generic name: Gabapentin<br><br>Brand name(s): Neurontin<br><br>Dosage form, strength, frequency: 800 mg TID |
| Diagnosis(es) relevant to this request:  Multiple sclerosis, Chronic back pain<br><br>Anticipated length of treatment: lifelong |

1) Previous unsuccessful medication therapies including dosage, frequency, and duration: Has been on Gabapentin 800 TID, Baclofen 30 TID recently increased to 50 TID, Naproxyn 500/Tylenol 500, with Avonex since before DOC. Seen by Dr. Chung on 11/7/2013 who recommended increasing Gabapentin to 1200 mg TID. MRI in 2009 documented findings of right side herniated disc of L5-S1 impinging the nerve root, severe, sharp, piercing pain in right low back that caused him to fall to the ground, thus the need for a wheelchair. he walks limited distances; prolonged walking produces episodic severe back pain, that radiates down anterior thigh and calf of right leg. Assessment: intermittent and possibly continuous radiculopathy.

2) Measures (objective if applicable) used to determine failure of first line agents: On Geodon, Buspar, Lamicatal, and zoloft for MHI, Elavil, Tegretol, and Effexor are contraindicated.

3) Identify the benchmark or baseline (ie: functional deficit, lab values, ADLs, walking distance): uses wheelchair prn exacerbations. Has not needed one since being incarcerated. Gabapentin NFR was denied 12/2013. It was recommended at that time to increase the Baclofin to 50 mg TID. A taper of Gabapenin was started and Baclofen was increased in several steps. Since then the patient reports that he is in pain all of the time. He is experiencing nausea which he relates to the constant pain. He has had to quit his job. He is currently be treated with Promethazine 25 mg PO BID to control nausea.

4) Identify objective measure or specific goal(s) trying to achieve: ADLs and beable to return to work.

5) Were relevant protocols, algorithms, or guidelines followed?    ☒ Yes     ☐ No     ☐ N/A

6) Other explanation to support your request: Diagnosed with MS 2009; MVA 2000 -- chronic pain since. Patient has been tapered off Gabapentin with negative effects. Recommendations for controlling pain have been followed without any benefit. He was seen by Dr. Chung, MD (Neurologist), 11/2013, who recommended increasing his Gabapentin to control his pain secondary to MS. I have reviewed UpToDate with regard to pain and MS. UpToDate states that Sensory Symptoms may be "radicular pains also can be present, particulary in the low thoracic and abdominal regions. In light of the patients loosing the ability to work, and a neurology consult recommending an increase in Gabapentin, I am requesting a new review of this patient's NFR. He does not have a history of abuse, or re-directing.

   a) Web address:

   b) Copy attached: ☐

| Requested by (include title): Jo Phillips, PA-C | Date of Request: 01/06/2014 |
|---|---|

State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 13-091 (01/10/2010)                                                                 LEGAL

# REQUEST TO USE NON-FORMULARY DRUG
Page 2 of 2



Department of
## Corrections

Offender Name: **CHOQUETTE, ETIENNE**

DOC #: **345717**

Date of Birth: **12/14/1963**

## REQUEST TO USE NON-FORMULARY DRUG (NFR)                Facility: WSP

| ACTION BY PHARMACY AND THERAPEUTICS COMMITTEE |
| --- |
| *A completed copy of this form must be placed in Legal section of patient's health record.* |

A. Action: Denied.

B. Comments: Per Clinical Pharmacology the only off-label use of gabapentin in multiple sclerosis has been limited to treatment of nystagmus. Per Up-to-Date, paroxysmal symptoms "include, but are not limited to pain, trunk and limb paresthesia, weakness, ataxia, pruritis, akinesia, and seizures." "These paroxysmal attacks typically respond to low doses of anticonvulsants such as carbamazepine and valproic acid and frequently remit after several weeks to months, usually without recurrence. Newer anticonvulsants such as gabapentin also have been used in small case studies."

Small case studes and low dose therapy do not substantiate sufficient clinical evidence for high dose use of gabapentin. Please refer this patient's case to CRC for additional review, and if approved then an NFR can be resubmitted at that time. An alternative would be to work with psych to see if a change in his therapy to include carbamazepine or valproic acid could benefit both his psych needs, as well as his MS needs. l

C. KOP vs. PLN recommendation:

| Chairperson P&T Committee or Designee: Michelle Southern,PharmD, CGP | Date of Response: 01/07/2014 |
| --- | --- |



COPY

*State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

DOC 13-091 (06/07/04) OCO                DOC 650.020                LEGAL

## Exhibit E

to

Third Amended Complaint



**DENIED**

| | |
|---|---|
| OFFENDER I.D. DATA | **CHOQUETTE, Etienne L.** |
| (Name, DOC#, DOB) | **345717    12/14/1963** |
| ProviderOne ID: | **100277378WA** |

### CONSULTATION REQUEST / REPORT

| FACILITY/UNIT WSP-Main UNF | ERD/PRD 9/25/2034 | REQUEST DATE 1/17/2014 |
|---|---|---|

☐ Interpreter needed – Language:                           Consult ID:    14343

SCHEDULE TYPE: ☐ Emergent    ☒ Urgent        ☐ Routine within    1    Week(s)

Proposed Intervention:    Determination medical necessity for treatment of neuropathic pain secondary to MS

NAME OF PROVIDER/SPECIALTY TO BE SEEN OR PROCEDURE TO BE DONE

Data to be sent with the patient: ☐ Lab    ☐ X-ray    ☐ H&P    ☐ MAR    ☐ progress note/PER/physician order

☐ Other: _____    ☒ None

Transportation needs: ☐ Car    ☐ Wheel chair van    ☐ Ambulance    ☒ None

Diagnosis <u>and</u> Reason for consultation, summary of present findings and date of onset (for CRC review, include subjective, co-morbidities, previous interventions, medications, examination and diagnostics, ability to perform ADLs, if working, any pain, if applicable):

50 yo with MS. Has been on Gabapentin for many years to control neuropathic pain associated with MS. Most recent NFR renewal was denied. Pt has complained of increased pain and had to quit his job as a result of the amount of pain that he is experiencing. Dr. Chung, Neurologist states that neuropathic pain is part of MS and recommended in Novermber that his Gabapentin be increased. The NFR was resubmitted with the informaiton that he was no longer working as a result of not having the medication. It was denied again, with the recommendation to to take is case to CRC. Requesting determination for treatment of neuropthatic pain secondary to MS>

Received

JAN 3 1 2014

Medical Records

COPY

CRC REVIEW COMMITTEE

Allergies: **Clindamycin/Lincomycin, Trazodone and derivatives, Seroquel.,**

☐ Series of appointments needed –   Number of appointments:

☐ L&I Work injury –   Claim # and Description: -

| | SIGNATURE AND TITLE OF REQUESTING PRACTITIONER Phillips, JoElla L. | DATE 1/21/2014 |
|---|---|---|

| Provider One patient #: 100277378WA | Provider One authorization #: |
|---|---|

| CRC TYPE: | ☒ Medical | ☐ Dental | ☐ Hep C | ☐ MH | ☐ Psychiatry |
|---|---|---|---|---|---|

| ☐ Level I by CRC | ☐ Level I by authorizing practitioner/designee |
|---|---|
| ☒ Level III by CRC **DENIED** | ☐ Level III by authorizing practitioner/designee |
| ☐ Out of state approval: | SIGNATURE AND TITLE OF APPROVING AUTHORITY Edwards, James J.    DATE 1/21/2014 |

### CONSULTANT: Please complete reverse

*State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

Distribution:   Original-Health Record upon completion   Copies-as needed

DOC 13-053 (12/06/2012) POL      DOC 610.040      DOC 610.600      DOC 610.650      CONSULTATION

28

**Exhibit F**

to

Third Amended Complaint


Department of
Corrections

OFFENDER I.D. DATA.  CHOQUETTE, Etienne L.
(Name. DOC# DOB)  345717    12/14/1963

# CARE REVIEW COMMITTEE REPORT

| DATE: | CONSULT ID: | | INSTITUTION: | ERD: |
|---|---|---|---|---|
| 1/29/2014 | 14343 | | WSP-Main | 9/25/2034 |

| PRIMARY CARE PRACTITIONER: | ATTENDING PHYSICIAN: | CASE PRESENTED BY: |
|---|---|---|
| , | Phillips, JoElla L. | Phillips, JoElla L. |

**Case Synopsis/Differential or Working Diagnosis:**

50 yo w/ MS. Has been on Gabapentin for many years to control neuropathic pain associated w/ MS. Most recent NFR renewal denied. Pt has c/o increased pain and had to quit his job as a result of the amount of pain that he is experiencing. Dr. Chung, Neurologist states that neuropathic pain is part of MS and recommended in November that Gabapentin be increased. NFR was resubmitted w/ the information that he was no longer working as a result of not having the medication. It was denied again, w/ recommendation to to take case to CRC. Requesting determination for tx of neuropathic pn secondary to MS. **Dx with MS in  09. Hx of lesions and diagnostics discussed. Neurological consultation May 2012, neuro exam unremarkable and recommended PT. Experienced a severe episode of pn and requested a w/c d/t not wanting to fall again. Was recommended to lose weight and strengthen his lower back. Previously had a job stocking in the kitchen. Last neurology was November  13, remains stable on avinex injections and experiencing sx of chronic MS. Recommended for neurontin. NFR for gabapentin was denied with recommended baclofen increase. Kite to provider c/o increased pain and c/o quitting his job d/t pain. C/o feeling inner organs in chest are "vibrating". pn causing nausea, describes locking of jaw and tension. Does his ADLs, requested HSR for program. Custody reports he doesn t go to yard and had quit his job. Discussed PE: ROM, strength. Discussed general neurology versus following with MS specialist. Case discussed by the group and determined it is NOT medically necessary.

**Intervention Proposed:**
Determination medical necessity for treatment of neuropathic pain secondary to MS

**Committee Recommendations:**
Level 3

COPY

Recommendation Legend:     Level I – Approved As Medically Necessary        Level III – Not Approved: Not  Medically Necessary

**End Date of Approval** (if indicated):

**Voting Members Present:**
Clifford Johnson, DO; Kelly Remy, PA-C; Kenneth Lauren, MD; Diego Lopez de Castilla, MD; Christine Bunnell, PA-C; Bo Stanbury, PA-C; Mary Keppler, ARNP; Roberta Kanive, ARNP; Patricia Christiansen, PA-C; Sheryl Allbert, ARNP; Martha "Marci" Newlon, ARNP; Frank Longano, MD; William Rollins, MD; Eric Larsen, ARNP; Joan Palmer; Phu Ngo, PA-C; James J. Edwards, MD; Jo Ella Phillips, PA-C; Glenn Silver, ARNP; H. Jon Reyes, PA-C; Ken E. Moore, PA-C; Shirlee M. Neisner, ARNP; Allison Anderson, ARNP; Kenneth Sawyer, MD; G. Steven Hammond, MD

PRACTITIONER SIGNATURE:

Phillips, JoElla L

State law (RCW 70.02: RCW 70.24.105; RCW 71.05.390) and or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 13-395 (12/06/2012)

CONSULTATION

31

**Exhibit G**

to

Third Amended Complaint



Department of
Corrections

| | OFFENDER I.D. DATA | CHOQUETTE, Etienne L. | |
|---|---|---|---|
| | (Name, DOC# DOB) | 345717    12/14/1963 | |
| | ProviderOne ID: | 100277378WA | |

**CONSULTATION REQUEST / REPORT**

| FACILITY/UNIT WSP-Main UNF | ERD/PRD 9/25/2034 | REQUEST DATE 2/6/2014 |
|---|---|---|

☐ Interpreter needed – Language: ▓▓▓▓                     Consult ID:  15063

SCHEDULE TYPE:  ☐ Emergent    ☐ Urgent    ☒ Routine within    4    Week(s)

Proposed Intervention:    evaluation by the MS clinic at U of W
_____
NAME OF PROVIDER/SPECIALTY TO BE SEEN OR PROCEDURE TO BE DONE

Data to be sent with the patient: ☐ Lab    ☐ X-ray    ☐ H&P    ☐ MAR    ☒ progress note/PER/physician order

☐ Other: _____    ☐ None

Transportation needs:  ☒ Car    ☐ Wheel chair van    ☐ Ambulance    ☐ None

Diagnosis <u>and</u> Reason for consultation, summary of present findings and date of onset (for CRC review, include subjective, co-morbidities, previous interventions, medications, examination and diagnostics, ability to perform ADLs, if working, any pain, if applicable):

Pt has definite dx of MS and has complaints of neuropathic pain, among other s/s. This is a somewhat atypical problem in MS. It has affected some of his daily activities. He has quit his job, which has not been typical behavior for him. So after discussion in CRC, it was suggested that he get an evaluation at the U of W. He then was presented to Medical Director's Conference and it was agreed that he be transferred to MCC for this purpose.

COPY

COPY

Allergies: **n/a,**

☐ Series of appointments needed –   Number of appointments:

☐ L&I Work injury –   Claim # and Description:  -

| | SIGNATURE AND TITLE OF REQUESTING PRACTITIONER Edwards, James J. | DATE 2/6/2014 |
|---|---|---|

Provider One patient #: 100277378WA                     Provider One authorization #: ▓▓▓▓

| CRC TYPE: | ☒ Medical | ☐ Dental | ☐ Hep C | ☐ MH | ☐ Psychiatry |
|---|---|---|---|---|---|

| ☐ Level I by CRC | ☒ Level I by authorizing practitioner/designee |
|---|---|

| ☐ Out of state approval: | SIGNATURE AND TITLE OF APPROVING AUTHORITY Edwards, James J. | DATE 2/6/2014 |
|---|---|---|

**CONSULTANT: Please complete reverse**

State law (RCW 70.02, RCW 70.24.105, RCW 71.05.390) and or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

Distribution:   Original-Health Record upon completion   Copies-as needed

DOC 13-053 (12/06/2012) POL              DOC 610.040      DOC 610.600      DOC 610.650              CONSULTATION

35

**Exhibit H**

to

Third Amended Complaint

Choquette, Etienne ( U3575493) DOB: 12/14/1963

## Etienne Choquette

| | | |
|---|---|---|
| 4/17/2014 10:30 AM   Office Visit | Department: Uw Medicine Ms Center | Description: Male DOB: 12/14/1963 |
| MRN: U3575493 | CSN/ENC#: 1772810999 | Provider: Annette Wundes, MD |

### Patient Demographics

Address
MONROE CORRECTION COMPLEX
16700  177th AVE , SE
MONROE WA 98272

Phone
360-794-2823 (Home)

### Reason for Visit

New Patient

### Diagnoses

**Multiple sclerosis**   - Primary
340

### Progress Notes

Progress Notes sign at close encounter by Wundes, Annette at 4/17/2014 12:45 PM

| Created By: | Wundes, Annette | User Type: | Physician | Created: | 4/17/2014  7:36 AM |
|---|---|---|---|---|---|
| Note Status: | Sign at close encounter | Cosign: | Cosign Not Required | Note Time: | 4/17/2014  7:36 AM |

## MULTIPLE SCLEROSIS CENTER NEW PATIENT NOTE

**Referral:** 50 year old male who has been kindly referred by Dr. Diego for evaluation of neuropathic pain and ***consideration of possible multiple sclerosis (MS).

Notes of neurologist Dr. Stephen Chung, Walla Walla Clinic 11/2013 reviewed: seemed stable in setting of outside dx MS but with c/o neuropathic pain and spasticity; recommended baclofen, gabapentin for sx management and continuation Avonex.
Note neurologist Dr. J Chapin 5/2012 reviewed: c/o legs collapsing after 2 steps at times while walking fine all day other days, per assessment no obvious concern MS relapse or neuro-claudicatio
Notes of neurologist Dr. Mariko Kita, Virginia MS Center 8/2009 reviewed when presenting for 2nd opinion re possible CNS demyelinating dz.

- Date of dx: 2009 by MS specialist Dr. Kita with brain and C-spine findings c/w MS, borderline abnormal VEP; diagnosed him with RRMS for dynamics of MRI findings though clinical presentation primarily of pain syndrome and some fleeting symptoms (? progressive features, ?pre-clinical).
- Current DMT:Avonex in 2011 ***
- Past DMT: Copaxone late 2009-early 2011, switched to Avonex in 2011 b/o only option available in penitentiary in Walla Walla
- Last MRI: 2009 since time of diagnosis
- Relapse/Progression: ***
- IVMP usage: never
- JC Virus antibody status: nd .

Per  chart review Dr. Kita and other VMC providers in 2009
Primarily debilitating chronic pain, primarily LBP, also neck pain.
Referred by pain specialist to neurological evaluation for possible CNS demyelinating disease.

Mindscape Epic Web                                                                                    Page 2 of 8

Known C3 lesion initially thought to be traumatic after MVA but then development of a new C7 lesion raising concern for possible CNS demyelinating dz.
2000 passenger in high-speed MVA, able to walk away from accident scene, following weak but slowly regaining strength, migraines ever since
2009 c/o involurntary body spasms, paresthesia, intermittent diysequilibiriul, sexual df, urinary hesitancy, pain walkign any distance

**Chief Complaint:** New Patient

**History of Present Illness:**
Primary issues are pain and spasms.
In his view, 1st year seemed fairly stabilized while on copaxone x 1.5y. Unsure if given all stressors of arrest, incarceration was stable but feels very definite that Avonex not controlling as well as sx seems getting worse.
Worsening pain and spasms.

Pain:
Most pian is deep in bone most in his legs and in his head

Described ~ 10m ago sudden new onset of pain in half strape across abdomen from belly button to spine, started at groin level and spread to above nipple, into arm pit and down into L thigh. Initially touch felt weird in that area and within 1 week pain in this location. Skin feels thick, pins/needles, burning, nauseating when touched. Cannot walk or exercise b/o increases pain. No new or worsened other neuro sx.
No po or iv steroids.
Sx remained on similar level, may have gotten used to it.
Was started on gabapentin, it was "great" and helped but drug was discontinued though neurologist recommended dose increase.
Since off gabapentin, pain greatly increased.
Was not started on something else, some alternative (?name) discussed but not approved.
Was told not brought back to gabapentin b/o his nerve pain not c/w MS.
Worse areas since dc thigh and L trunk.
Head is also really bad since dc gabapentin.
C/o thick, pins/needles, burning on head in forehead radiates to neck constantly.
Different than migraines but contributes to migraines.

MVA stripe /nerve damage neck and if laying not correctly affects arms.
R foot randomly razor tips strips.

Spasms
Randomly twitches all over
Pretty good spasms in hands/arms at times but majority in BLE and worse at bedtime.
Now increased in severity since off gabapentin. And in the last 1m at Monroe instead of legs going off, now from whole waist goes "whamp".
Daily constant problem.
Whenever relaxes, gets spasms.
Not doing any stretching.

Baclofen though was increased as recommended and helped with spasms. Was increased from 60 to 90 mg immediately, tolerated. Was further increased up 150 mg when gabapentin, nausea and was reduced to 90 mg w/o changing nausea.

40

Vision: ***ON. *** diplopia.
Bilateral blurry vision on/off independent from migraines, dry sockets, sometimes painful moving eyes, never 24h.

Motor: *** weakness, spasticity, spasms.
C/o generalized weakness, not focal.

Sensory: *** numbness, tingling, paresthesia.

Gait/Balance:
- Walks without device, no falls, does not appear to be affected.
- in past used scooter,
- once in WallaWalla needed WC x 2m b/o "was shot down from waist", best guestimate a few years ago, likely in 2012 when saw 1st neurologist. Figured that must be what they mean with relapse b/o iniitally WC x 2m, then walker x 3 wk and then full recovery. Both legs were weak, some incontinence urinary at that time which improved over time.
- per note Dr. Chung 11/2013 using scooter on/off starting 2005 b/o BLE weakness

Bladder/bowel:
- at this point bladder fct "seems to be ok" though some dribbling afterwards, no hestitancy, no UTI.
- no BM, defer ***Constipation. *** sexual df.

Mood:
- H/o depression and anxiety, zoloft feels works well.
- feels last mental PA was "messing with her", unsure if had halluzinations
- No h/o hospitalizations but h/o SA many years ago, doesn't want to talk about it.

Fatigue.
- Endorses both physical or mental fatigue. Body cannot get past the pain, mind never shuts down.
- Sleep varies, in current isolation less sleep, in WallaWalla better sleep with interactions and activities
- Sleep interruped by bladder several times /night , current amount pain and spasticity interfere with sleep.

Memory:
- since MVA both short and long-term memory. Varies, some days better/worse. Big picture somewhat worse, not by a lot
- forgetfulness, distractability, sometime slow thinking.

Temperature sensitivity:
Heat uncomfortable, vague statements.
Cold triggers gives immediate spasms.

Headaches: constant migraine since MVA 2000, never goes away, sometimes worse. N in past, V-, LS+, NS+. Likely mother had migraines.
Head trauma: with MVA 2000, past concussions on/off
LOC: *** no history
MVA:*** no history
Drug use: *** no history, specifically denies use of cocaine or LSD
Meningitis/encephalitis: no history

Mindscape Epic Web

Copaxone:
- tolerated reasonably well, hated daily injections but no AE, unsure if stabilized the MS as not gotten MRI and didn't do reading on MS to bias himself. In his view, 1st year seemed fairly stabilized but feels Avonex not controlling as well as sx seems getting worse.

Avonex:
- makes whole body ache, sick to stomach, tears head apart, no chills, no fever but serious body aches 6-24h despite premedication with each injection
- premedicates with benadryl, naproxen and 2 tylenol which helps, was worse before

----
MRI b, c, t
Avonex
Restart gabapentin

**ROS:**
***


**Past Medical History:** has no past medical history on file.

**Medications:**
No current outpatient prescriptions on file.

No current facility-administered medications for this visit.


**Family History:** family history is not on file.

**Social History:**
History

Social History Narrative
• No narrative on file


**Data:**
Brain MRI +/- contrast  :    Images personally reviewed.
6/2009- per Dr. Kita lesion abuting L posterior horn, small lesion w/i CC.

C-spine MRI +/- contrast  :    Images personally reviewed.
6/2009 - per report lesion at C3 and C7 highly suggestive of MS with new lesion at C7; per Dr. Kita lesion consistent at C3 throughout years and lesion at C7 new in 5/2009, not seen in 12/2006 or 6/2005

T-spine MRI +/- contrast  :    Images personally reviewed.
6/2009 - neg

L-spine MRI 2009: small R disc protrusion L5-S1 with impingement R S1

CSF 7/2009:  Not done. -- Normal basic profile, OCB x, IgG index x.
- per Dr. Kita elevation protein, but too small sample, no OCB or IgG done

VEP : Per report 107 vs 105 ms, bilateral symmetric but delayed which stated as possible or probably WNL. Advise clinical correlation. Per Dr. Kita bilateral borderline abnorma.
SSEP : No prolongation central conduction time.

Mindscape Epic Web

Blood work for MS mimics initiated by Dr. Kita 2009, reviewed wnl.

EEG 2002 VMC: Normal

**Physical Exam:**
There were no vitals taken for this visit.

L 20/40 (past childhood injury), R 20/30
Finger rub L slightly, not R.
BLE hyperreflexes, slightly R>L patella,
2-3 beat lonus bil, babinski neg
{Physical Exams:108734}

**Assesment and Plan:**
Mr. Choquette is a 50 year old male with { :108739}, currently on { :108597}, ***

Neuropathic pain seems c/w MS, suspect new T-spine involvement based on description of onset of truncal pain ~ 10 months ago.

# recommend brain, c-spine and T-spine MRI w/wo. Request comparison to MRI from 2009 for info on interval change.

# recommend to restart gabapentin which is standard treatment and patient describes rx benefit. Please note that though gabapentin primarily provided for neuropathic pain it indeed also helps with spasticity. Although patient was not aware of that, his statements of increase of spasticity since discontinuation of gabapentin seem appropriate. Surely, increased pain also contributes to spasticity as well.
Previously Dr. Chung recommended to increase from 1200mg bid to tid for total of and agree with recommendation but needs to be increased slowly now that off agent for a while, eg start 300 mg tid x 3 days, 600mg tid x 3 days, 900 mg tid x 3 days, then 1200 mg. Slow down if AE.

# I recommend reconsideration of Avonex as DMT. Interferon (Avonex, Betaseron, Rebif) are not a good DMT options in situation of neuropathic pain which from the start has been the primary sx in this patient. It is well documented that IFN increase chronic or neuropathic pain. Because of this diagnosing neurologist Dr. instead started patient on copaxone rather than IFN.
In addition, seemed to have had clinical relapse/worsening while on agent. Final decision re DMT, whether Copaxone or possibly po option Aubagio or Tecfidera, may depend on MRI results.
Happy to consult per e-mail or phone once MRI results available.

# recommend CBCdiff, CMP 2x /y and TSH 1x/y while on Avonex

# recommend Vit B12 and MMA testing b/o h/o neuropathic pain to r/o additional contributing factor. Substitute Vit B12 im monthly x 6 if MMA elevated and/or Vit B12 <300; substitute Vit B12 1000 mg po daily if Vit B12 <400 and MMA nl.

I thank for the kind referral of this patient. Please do not hesitate to contact me directly in case of any questions or concerns. I can be reached most easily by email (awundes@uw. edu) or pager (206-540-0352).

Mindscape Epic Web                                                                                        Page 6 of 8

Histories, medications and problem list have been reviewed and updated as appropriate:
YES.

More than 50% of this encounter was spent in counseling and coordination of patient care
with plan outlined above. Face-to-face time with this patient was 60 minutes.

## Vitals - Last Recorded

| BP | Pulse | Temp | Ht | Wt | BMI |
|---|---|---|---|---|---|
| 118/73 | 70 | 97 □F (36.1 □C) (Temporal) | 5' 9" (1.753 m) | 251 lb 4.8 oz (113.989 kg) | 37.09 kg/m2 |

## Encounter Messages

No messages in this encounter

Reviewed On: **4/17/2014** By: **Wundes, Annette**

## Allergies as of 4/17/2014

| Allergen | Noted | Type | Reactions |
|---|---|---|---|
| **Seroquel (Quetiapine)** "almost killed me" | 04/17/2014 | Allergy | Shortness of Breath |
| **Trazodone** | 04/17/2014 | Allergy | Shortness of Breath |

## Discontinued Medications

Reason for Discontinue

**Interferon Beta-1a (AVONEX PEN) 30 MCG/0.5ML Intramuscular Kit**

## Outpatient Medications at End of Encounter as of 4/17/2014

| Medication | Disp | Refills | Start | End |
|---|---|---|---|---|
| **Acetaminophen (TYLENOL EXTRA STRENGTH) 500 MG Oral Tab (Taking)** | | | | |

Sig - Route: one tablet daily (20-30 pills/m) - Oral
Class: Historical
Number of times this order has been
changed since signing: **1**
Order Audit Trail

**Aspirin-Acetaminophen-Caffeine (EXCEDRIN MIGRAINE) 250-250-65 MG Oral Tab (Taking)**
Sig - Route: take 2 tablets everyday as needed for migraine (allowed 20 pills/m, takes 2 at a time, would take more if more allowed) - Oral
Class: Historical
Number of times this order has been
changed since signing: **1**
Order Audit Trail

**Baclofen 10 MG Oral Tab (Taking)**
Sig - Route: 3 TABLET 3 TIMES DAILY - Oral
Class: Historical
Number of times this order has been
changed since signing: **1**
Order Audit Trail

**BusPIRone HCl 15 MG Oral Tab (Taking)**
Sig - Route: decreasing dose take 1 tablet three times a day (reduced dose in Walla Walla) - Oral

Mindscape Epic Web

Class: Historical
Number of times this order has been
changed since signing: 1
Order Audit Trail

**DiphenhydrAMINE HCl (BENADRYL OR) (Taking)**
Sig - Route: 25 mg capsule once weekly with avonex - Oral
Class: Historical
Number of times this order has been
changed since signing: **1**
Order Audit Trail

**Interferon Beta-1a (AVONEX IM) (Taking)**
Sig - Route: once weekly - Intramuscular
Class: Historical

**LamoTRIgine 200 MG Oral Tab (Taking)**
Sig - Route: take 200 mg twice daily (mood stabilizer) - Oral
Class: Historical
Number of times this order has been
changed since signing: **1**
Order Audit Trail

**Metoprolol Tartrate (LOPRESSOR OR) (Taking)**
Sig - Route: 25mg tablets one a day (unsure if for HTN or migraines) - Oral
Class: Historical
Number of times this order has been
changed since signing: **1**
Order Audit Trail

**Omeprazole (PRILOSEC OR) (Taking)**
Sig - Route: 20mg  one a day - Oral
Class: Historical

**Promethazine HCl 25 MG Oral Tab**
Sig - Route: 1 tablet twice daily - Oral
Class: Historical

**Sertraline HCl 100 MG Oral Tab (Taking)**
Sig - Route: twice a day (long-term for bipolar) - Oral
Class: Historical
Number of times this order has been
changed since signing: **1**
Order Audit Trail

**Simvastatin 20 MG Oral Tab (Taking)**
Sig - Route: one tablet daily - Oral
Class: Historical

## All Flowsheet Templates (all recorded)

Vital Data Flowsheet
Review of Systems Flowsheet

## Encounter-Level Documents:

There are no encounter-level documents.

## AVS Reports

| Date/Time | Report | Action | User |
|---|---|---|---|
| 4/17/2014 12:24 PM | Visit Summary | Printed | Wundes, Annette |

Mindscape Epic Web                                                                        Page 8 of 8

| | | | |
|---|---|---|---|
| 4/17/2014<br>12:28 PM | Visit Summary | Printed | Wundes, Annette |

**Other Encounter Related Information**

**Problem List**

**History**

**Patient Instructions**

**Immunizations**

Choquette, Etienne ( U3575493) Printed at 4/18/14 9:01 AM

**Exhibit I**

to

Third Amended Complaint



Department of
**Corrections**
WASHINGTON STATE

OFFENDER I.D. DATA: CHOQUETTE, Etienne L.
(Name, DOC#, DOB)   345717   12/14/1963

## CARE REVIEW COMMITTEE REPORT

| DATE: 4/23/2014 | CONSULT ID: 18127 | INSTITUTION: MCC-WSR | ERD: 9/25/2034 |
|---|---|---|---|
| PRIMARY CARE PRACTITIONER: | ATTENDING PHYSICIAN: Lopez de Castilla, Diego | | CASE PRESENTED BY: Lopez de Castilla, Diego |

**Case Synopsis/Differential or Working Diagnosis:**

50 yo man with MS, seen recently at MS clinic at UW. Neurologist recommended restarting gabapentin. Although gabapentin is primarily prescribed for neuropathic pain it also helps with spasticity. The patient reported increase spasticity since he discontinued gabapentin. The recommended dose is 300mg po tid x 3 days, then 600mg po tid x 3, then 900mg po tid x 3, then 1200mg po tid thereafter. This was previously denied by CRC as it was thought to be for neuropathic pain. Gabapentin for spasticity is off-label use and the formulary limit is usually 2400mg a day, so this is also above the suggested limit. It is known to be a drug of abuse in DOC. Exam: c/o pain on L flank and lumbar area. Spasms to BUE and BLE. Takes baclofen for spasms. . Normal neurological exam. Remainder of exam is completely normal. He is able to perform his ADL's and is pretty functional. Not sure why we would prescribe anything for spasticity when he shows no objective signs, only very mild in calves and upper extremity. No atrophy noted. Strength 5/5 in all muscle groups. Reflexes symmetrical, normal gait/balance. He takes interferon for his MS. He has a hx of poly-substance abuse. Dx was made by MRI at Virginia Mason after presenting for pain. While at WSP he was c/o of pain but functioned very well. In the IPU now for over 2 months w/o Gabapentin and is still very functional. Suggested to talk w/ neurologist regarding Gabapentin suggestion. The intervention proposed was discussed and determined it DID NOT meet medical necessity.

**Intervention Proposed:**

Treatment with gabapentin

**Committee Recommendations:**

Level 3

Recommendation Legend:   Level I – Approved As Medically Necessary   Level III – Not Approved: Not Medically Necessary

**End Date of Approval (if indicated):**

**Voting Members Present:**

Clifford Johnson, DO; Edith (Edie) Kroha, ARNP; Dale Robertson, PA-C; Kelly Remy, PA-C; David Lusche, PA-C; Kenneth Lauren, MD; Diego Lopez de Castilla, MD; Christine Bunnell, PA-C; Bo Stanbury, PA-C; Mary Keppler, ARNP; Patricia Christiansen, PA-C; Frank Longano, MD; William Rollins, MD; Eric Larsen, ARNP; Laura Manigo-Hedt, PA-C; Joan Palmer PA-C; Phu Ngo, PA-C; Phoumy Bounkeua, PA-C; James J. Edwards, MD; F. John Smith, MD; Glenn Silver, ARNP; H. Jon Reyes, PA-C; Ken E. Moore, PA-C; Shirlee M. Neisner, ARNP; Kenneth Sawyer, MD; G. Steven Hammond, MD

PRACTITIONER SIGNATURE:

Lopez de Castilla, Diego

State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 13-395 (12/06/2012)                                                                                    CONSULTATION

**Exhibit J**

to

Third Amended Complaint

| From: | Hammond, G. Steven (DOC) |
|---|---|
| To: | Lopez de Castilla, Diego (DOC) |
| Cc: | Lauren, Kenneth B. (DOC); Varon, Michael B. (DOC) |
| Subject: | RE: CHOQUETTE #345717 |
| Date: | Wednesday, April 23, 2014 1:33:49 PM |

Yes, I would recommend re-presenting in light of the new information.

I beg to differ with some of Dr. Wundes' expressed opinions but that is neither here nor there, although I will grant that she is the expert in evaluating and managing MS.

Having worked in several care settings it is interesting how one's clinical understanding is shaped by different practice experiences.

Thanks,
Steve

**From:** Lopez de Castilla, Diego (DOC)
**Sent:** Wednesday, April 23, 2014 1:03 PM
**To:** Hammond, G. Steven (DOC)
**Cc:** Lauren, Kenneth B. (DOC); Varon, Michael B. (DOC)
**Subject:** RE: CHOQUETTE #345717

Dr. Hammond
Should I represent the case to CRC next week?

Please advise.

Diego

**From:** Annette Wundes [mailto:awundes@uw.edu]
**Sent:** Wednesday, April 23, 2014 12:51 PM
**To:** Lopez de Castilla, Diego (DOC)
**Cc:** Lauren, Kenneth B. (DOC); Hammond, G. Steven (DOC); Varon, Michael B. (DOC)
**Subject:** RE: CHOQUETTE #345717

Dear Diego,
honestly, I don't know how to say this politiely but I yet have to find someone who abuses gabapentin. If that were the case, he would ask for other stuff, like opioids.
But instead he asks for what every neurologist treating MS or neuropathy greatly prefers and prescribes in patients with neuropathic pain which is a very, very common sx in MS and often can be disabling pain. Gabapentin is the most commonly used agent for this symptom and is not associated with tolerance or addiction risk. Often patients with MS need rather high doses and/or alternative other (and more costly) agents like pregabalin or antidepressants like cymbalta. Gabapentin in this situation is a standard approach - esp if we already know its working whereas with every other alternative agent you would run the risk in an individual patient that you cannot predict if working or not and whether side effects or not. If I recall correctly, instead baclofen was increased which is actually NOT a replacement of gabapentin but as my note outlines spasticity can worsen with discontinuation of gabapentin for 2 reasons: a) actually gabapentin has some impact on spasticity as well and b) spasticity is

PDU-33846    000005

worse when in pain.

As with pain of other etiology, there is no "objective" test for the degree of neuropathic pain MS patients have by the pure nature of this symptom but again it is a very common and often disabling MS symptom. The amount of neuropathic pain also does not at all correlate with the degree of physical disability. I not at all doubt the presence of Mr. Choquette's pain.

I appreciate that you asked for approval of gabapentin for this patient. I am afraid though that their response demonstrates that they are not really at par with standard medical MS management.
Please let me know if or how I can be of additional help.
Best,
Annette

**From:** Lopez de Castilla, Diego (DOC) [dlopezdecastilla@DOC1.WA.GOV]
**Sent:** Wednesday, April 23, 2014 12:17 PM
**To:** Annette Wundes
**Cc:** Lauren, Kenneth B. (DOC); Hammond, G. Steven (DOC); Varon, Michael B. (DOC)
**Subject:** RE: CHOQUETTE #345717

Dear Annette,

Gabapentin is a restricted drug in the Department of Corrections. For that reason I presented Mr. Choquette to the Clinical Review Committee this morning and requested to get approval for gabapentin. The Committee denied the use of gabapentin.

The Committee felt that the use of gabapentin was more based on a clinical symptom (reported by the patient with prior history of Polysubstance abuse) rather than on an objective abnormality on physical exam. The Committee asked me to contact you and ask for your opinion.

Thank you

Diego

**From:** Annette Wundes [mailto:awundes@uw.edu]
**Sent:** Tuesday, April 22, 2014 10:55 AM
**To:** Lopez de Castilla, Diego (DOC); Summers, Audrey E. (DOC); Kelly D. Bender; Hillary P. Lipe
**Cc:** Lauren, Kenneth B. (DOC)
**Subject:** RE: CHOQUETTE #345717

Great, Diego.

Hillary,
FYI you will see this patient (who is incarcerated) in FU after MRI. Finalized my note on him as of yesterday night. We can discuss case before my departure to AAN meeting if you have questions.
If there are any questions while I am gone, I'll be back on Fri 5/2.
Dr. Diego Lopez de Castilla and his team work closely together with us on this and another patient with MS. They are great in following up and direct communication.
Best,
A.

**Exhibit K**

to

Third Amended Complaint



Department of
**Corrections**

OFFENDER I.D. DATA: **CHOQUETTE, Etienne L.**

(Name, DOC#, DOB)   345717        12/14/1963

## CARE REVIEW COMMITTEE REPORT

| DATE: 4/30/2014 | CONSULT ID: 18448 | INSTITUTION: MCC-WSR | ERD: 9/25/2034 |
|---|---|---|---|
| PRIMARY CARE PRACTITIONER: , | ATTENDING PHYSICIAN: Lopez de Castilla, Diego | | CASE PRESENTED BY: Lopez de Castilla, Diego |

**Case Synopsis/Differential or Working Diagnosis:**

50yo man with multiple sclerosis c/o neuropathic pain over extremities and muscle spasm. Pain is more over his legs and head. The pain started across the abdomen from the belly button to flank and then to the spine. The pain started >10months ago. Spasms: has random twitches all over his body, more in both legs. He saw a neurologist who recommended gabapentin but is was denied by CRC. Was evaluated at MS clinic at HMC last week. Neurologist recommended gabapentin to treat neuropathic pain and spasms. His case was presented to CRC last week. CRC denied gabapentin for the second time. CRC felt that physical exam did not correlate with patients complains. On exam: normal vital signs, Neuro: CN intact, good functional vision, appropriate pupillary responses, appropriate visual fields, EOMI, no nystagmus, no dysconjugate gaze, no INO , face symmetrical, no facial paresis, facial sensation intact, known hypacusis, able to slightly detect finger rub L slightly, not R. Speech fluent and no dysarthria. Normal gait, normal muscle tone. DTR normal.**case being re-presented for tx of neuropathic pain. Neuro recommendations included start tx of neuropathic pain and spasms. PE reviewed as above. Neuro consulted since last CRC. Pt taking 60mg baclofen TID currently, may also be masking some of his sx. Was recommended to titrate gabapentin up to 1200 TID. Neuro did not comment on baclofen dosing. Multiple neurologists recommending gabapentin. Discussed that the tx is what needs approval, pharmacy will handle the NFR. Case discussed by the group and determined it IS medically necessary.

**Intervention Proposed:**

Treatment of neuropathic pain and spasms secondary to multiple sclerosis

COPY

**Committee Recommendations:**

Level 1

Recommendation Legend:    Level I – Approved As Medically Necessary        Level III – Not Approved: Not Medically Necessary

**End Date of Approval** (if indicated):

**Voting Members Present:**

Clifford Johnson, DO; Edith (Edie) Kroha, ARNP; Dale Robertson, PA-C; Kelly Remy, PA-C; David Lusche, PA-C; Kenneth Lauren, MD; Diego Lopez de Castilla, MD; Christine Bunnell, PA-C; Bo Stanbury, PA-C; Mary Keppler, ARNP; Patricia Christiansen, PA-C; Martha "Marci" Newlon, ARNP; William Rollins, MD; Eric Larsen, ARNP; Laura Manigo-Hedt, PA-C; Joan Palmer PA-C; Phu Ngo, PA-C; James J. Edwards, MD; F. John Smith, MD; Glenn Silver, ARNP; H. Jon Reyes, PA-C; Ken E. Moore, PA-C; Shirlee M. Neisner, ARNP; Allison Anderson, ARNP; Jennifer Ambrose, PA-C; Kenneth Sawyer, MD

| PRACTITIONER SIGNATURE: |
|---|
| Lopez de Castilla, Diego |

State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 13-395 (12/06/2012)                                                                                    CONSULTATION

**Exhibit L**

To

Plaintiff's Motion for Leave to

Amend the Complaint

CONFIDENTIAL
GRIEVANCE COORDINATOR

WSR-INT
H008A
Acc-W3P4

**Department of**
**Corrections**
WASHINGTON STATE

| | |
|---|---|
| LOG I.D. NUMBER/NUM. DE REGISTRO | 13551313 |

**APPEAL TO LEVEL III**
**APELACIÓN AL 3ER NIVEL**

| Name:<br>Nombre: | Last<br>Apellido | First<br>Nombre | Middle<br>2do Nombre | DOC Number<br>Número DOC | Facility/Office<br>Institución/Oficina | Unit/Cell<br>Unidad/Celda |
|---|---|---|---|---|---|---|
| | Choquette, Etienne | | | 345717 | WSP | FW/102 |

| PART A - APPEAL TO LEVEL III<br>PARTE A - APELACIÓN 3ER NIVEL | Date Typed / Fecha escrita a mano<br>2/4/14 | Due Date / Fecha de vencimiento<br>03/04/14 |
|---|---|---|

**I WANT TO GRIEVE / QUIERO QUEJARME DE:** I have been taking gabapentin for nerve pain for quite some time for my M.S. It has been taken away even though D.O.C.'s local neurologist recommended a 50% increase. Now I'm being told my nerve pain isn't a regular symptom of M.S. I can't tell you what I'm supposed to have or not supposed to have. I can only go by what's happening to me. I need my meds back as my symptoms are getting worse.

**SUGGESTED REMEDY / REMEDIO SUGERIDO:** Give me my meds back.

| /s/ J. Aiyeku | 2/5/14 | /s/ Etienne Choquette | 2/5/14 |
|---|---|---|---|
| Grievance Coordinator Signature<br>Firma del Coordinador de quejas | Date<br>Fecha | Grievant Signature<br>Firma del agraviado | Date<br>Fecha |

**PART B - LEVEL III RESPONSE/PARTE B - RESPUESTA 3ER NIVEL**

I reviewed your initial grievance as well as all appeals and responses.

DOC Director of Nursing B. Braid also reviewed this grievance and provided this response:

I reviewed your Level I and II grievance, the investigation, and the responses. I have read your Level III appeal. You grieve the medical management of your neurogenic pain from MS, specifically having your gabapentin stopped.

There is no evidence that you are being denied care that is medically necessary as defined in the DOC Offender Health Plan. It appears your providers are following the DOC Offender Health Plan guidelines for use of Gabapentin.

Your grievance is not supported and I councur with the Level I and II grievance responses. I encourage you to work collaboratively with your health care providers to attain the best medically necessary care for your health conditions.

You remain free to pursue additional care under the terms of DOC Policy 600.020, Offender Paid Health Care.

| | 3-21-14 |
|---|---|
| Assistant Secretary/Deputy Director/designee<br>Subsecretario/designado          Kevin Bovenkamp | Date<br>Fecha |

6