UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ETIENNE L. CHOQUETTE,

                    Plaintiff,

     v.

CRIS DuVALL, et al.,

                    Defendants.

CASE NO. 3:15-cv-05838-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: JANUARY 5, 2018

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.

In this 42 U.S.C. § 1983 civil rights action, plaintiff alleges that defendants violated his Eighth Amendment rights when they revoked pain medication for his chronic pain and refused to return it to him for approximately five months. Dkt. 61.  Defendants move for summary judgment, arguing that plaintiff cannot prove deliberate indifference, that two defendants were

REPORT AND RECOMMENDATION - 1

not personal participants in the alleged misconduct, that all defendants have qualified immunity, and that plaintiff is not entitled to injunctive relief. Dkt. 82.

Plaintiff has provided facts sufficient for a reasonable trier of fact to determine that certain defendants were deliberately indifferent with regard to his medical care. Further, there is clearly established federal law putting defendants on notice that their behavior was unlawful. Therefore, they are not entitled to qualified immunity. However, plaintiff has not effectively demonstrated defendant Bovenkamp's personal participation -- so he should be dismissed from the action. Further, plaintiff has not shown that there is a likelihood that these alleged violations will recur, so injunctive relief is inappropriate. Therefore, the Court recommends granting defendants' motion in part, denying in part, and allow the surviving claims against certain defendants to proceed on the merits.

**BACKGROUND**

Plaintiff is a state prisoner currently confined in the Washington State Penitentiary ("WSP"). Dkt. 61. He was diagnosed with multiple sclerosis ("MS") in 2009 before he was in the custody of the Washington Department of Corrections ("DOC"). Dkt. 84 at 19. Because he experienced neuropathy -- a neurological condition causing pain and discomfort -- he was prescribed gabapentin, which is a drug to address his pain. *Id*. at 20. He continued to take gabapentin when he was taken into DOC custody in 2011. *Id*. at 20-21. In 2012, while in custody, his dosage was increased to address additional pain. *Id*. at 21.

On November 7, 2013, plaintiff was seen by a neurologist, Dr. Steven Chung. Dkt. 84 at 23. Dr. Chung recommended that plaintiff's gabapentin dosage again be increased to address his neuropathy. *Id*. at 24. He recommended an increase from 2400 mg to 3600 mg of gabapentin per day, which was outside the standard formulary used by DOC medical practitioners. S*ee Id*. at 9-

11. Because of this, plaintiff's primary care provider, Physician's Assistant ("PA") Jo Ella Phillips, submitted a Non-Formulary Request ("NFR") on November 27, 2013 (*Id*. at 24). The NFR was denied by defendant Dr. Cris DuVall, who instead recommended stopping treatment with gabapentin altogether, replacing it with clinical observation and an increase of one of plaintiff's other MS medications. *Id*. Both defendant DuVall and defendant Dr. G. Steven Hammond explained that they did not understand why gabapentin would be used in this context. *Id*. at 25-26. Plaintiff began to taper off gabapentin in December of 2013. *Id*. at 26.

On January 6, 2014, PA Phillips submitted a second NFR to place plaintiff back on gabapentin, explaining that the deprivation of the drug had negative effects on him. *Id*. at 27; Dkt. 88 at 193. Defendant Dr. Michelle Southern denied the NFR, explaining that the only off-label use for gabapentin in MS cases was for nystagmus, an eye condition. Dkt. 84 at 27. However, she suggested that PA Phillips refer the case to the Care Review Committee ("CRC"), which is a body tasked with reviewing NFRs, to determine whether or not the requested medical relief was medically necessary. *Id*. On January 29, 2014, PA Phillips presented plaintiff's case to the CRC, arguing that gabapentin should be re-administered, but the CRC determined that gabapentin was not medically necessary and declined to put plaintiff back on the drug. *Id*. at 28. However, CRC also decided to send plaintiff to a specialist in Seattle to acquire further information. *Id*. at 28-29.

To more easily facilitate his appointment, plaintiff was transferred to the Monroe Correctional Complex ("MCC") in February of 2014. Dkt. 84 at 29; Dkt. 91-3 at 19. He was supposed to meet with a neurologist and MS specialist, Dr. Annette Wundes. Dkt. 94 at 29. However, due to unforeseen delays and miscommunications, plaintiff was required to stay at

MCC until April 17, 2014. *Id*. All this time, plaintiff alleges that he continued to suffer debilitating neuropathic pain.

When she did examine plaintiff, Dr. Wundes recommended that plaintiff be placed back on gabapentin for his neuropathic pain associated with MS -- the same recommendation earlier provided by Dr. Chung. *Id*.

On April 23, 2014, plaintiff's doctor at MCC, Dr. Diego Lopez de Castilla, presented plaintiff's case to the CRC. Dkt. 84 at 29. However, the CRC again "determined [treatment with gabapentin] DID NOT meet medical necessity" because of a lack of objective evidence. Dkt. 91-4 at 2 (emphasis in original); Dkt. 84 at 31. Dr. de Castilla emailed Dr. Wundes regarding CRC's decision. Dkt. 84 at 31. Dr. Wundes expressed concern that CRC would not allow plaintiff to follow a gabapentin regimen. Dkts. 84 at 31. 91-4 at 4. She also noted that she had no doubt plaintiff was in pain, that there was no "objective" test to prove plaintiff's pain, and that gabapentin was the standard, first-line drug for neuropathic pain in MS patients. Dkts. 91-4 at 4. In light of this information, Dr. de Castilla presented plaintiff's case to CRC once again. Dkt. 84 at 32. On April 30, 2014, after plaintiff had gone almost five months without gabapentin, CRC finally determined that gabapentin was medically necessary for plaintiff's condition. *Id*.; Dkt. 91-4 at 9. Plaintiff was provided a regimen of gabapentin and has been taking gabapentin since CRC's final decision. Dkt. 84 at 32. As a result, plaintiff's neuropathic pain has decreased significantly. His case has been reviewed annually and each time his request for treatment with gabapentin has been approved. *Id*.

### PROCEDURAL HISTORY

Plaintiff filed his complaint in November of 2015. Dkt. 1. Pursuant to court order, he filed both an amended complaint and a second amended complaint. Dkts. 10, 14. After the Court

directed service on defendants (Dkt. 17) and after defendants filed a motion to dismiss for failure to state claim (Dkt. 40), plaintiff acquired counsel (Dkt. 46) and filed a motion to amend his complaint (Dkt. 58). The Court granted plaintiff's motion (Dkt. 60) and plaintiff filed his third amended complaint in November of 2016 (Dkt. 61). Because the motion to deny addressed the second amended complaint, the Court denied it as moot. Dkts. 62, 65.

In his third amended complaint, plaintiff alleges that defendants, medical officials with the DOC, violated his Eighth Amendment rights to adequate treatment when they stopped his gabapentin treatment. Dkt. 61. He alleges that defendants relied on inferior medical opinions and ignored the recommendations of plaintiff's treating neurologists. *Id*. He seeks injunctive relief as well as damages. *Id*.

Defendants filed a second motion to dismiss. Dkt. 64. Pursuant to an order from this Court, the motion to dismiss was renamed as a motion for summary judgment. Dkt. 69. The Court subsequently ordered the action stayed, set a discovery plan, and renoted the motion for summary judgment with leave to withdraw and file a second motion for summary judgment. Dkt. 72, 75.

Defendants withdrew their original motion for summary judgment and filed the motion for summary judgment currently before the Court. Dkt. 82. Defendants allege that plaintiff cannot show they acted with deliberate indifference when providing plaintiff's medical care, that they did not use "inferior" knowledge when determining plaintiff's treatment, that two defendants did not personally participate in any constitutional deprivation, that plaintiff is not entitled to injunctive relief, and that all defendants are entitled to qualified immunity. Dkt. 82. Plaintiff filed a response (Dkt. 90) and defendants filed a reply (Dkt. 97). Plaintiff also filed three motions to exclude testimony, seeking to exclude both the declarations and expert testimony of

three potential defense witnesses. Dkts. 93, 94, 96. Defendants responded to these motions. Dkts. 101, 102, 103. In defendants' reply to plaintiff's response, defendants included a motion to strike the three motions to exclude. Dkt. 97 at 2-3. Pursuant to court order, counsel for the parties appeared at oral argument on December 7, 2017, and presented on both the motion for summary judgment and the motions to exclude.

## STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider whether particular facts are material and whether there is a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c). When presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted). With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issues raised in this motion, e.g. whether the defendants acted with deliberate indifference. *See Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991).

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 at n. 11 (1986); *Anderson*, 477 U.S. at 249-50. However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989). Further, a court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(2); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

**DISCUSSION**

In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

**I.      Deliberate Indifference**

In their motion for summary judgment, defendants first argue that a reasonable finder of fact could not conclude that defendants' actions violated plaintiff's constitutional protections. To establish a constitutional violation under the Eighth Amendment due to inadequate medical care, a plaintiff must show "deliberate indifference" by prison officials to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). First, a "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35; *McGuckin*, 954 F.2d at 1059. Second, the indifference to medical needs must be substantial; a constitutional violation is not established by negligence or "an inadvertent failure to provide adequate medical care." *Estelle*, 429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988). Prison officials violate their obligation by "intentionally denying or delaying access to medical care." *Estelle,* 429 U.S. at 104–05.

It is well established that differing opinions on medical treatment do not amount to a violation under the Eighth Amendment. *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1989) (citations omitted). To prevail on an Eighth Amendment claim in these circumstances, a plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id.* Though a mere difference in medical opinion does not constitute deliberate indifference, ignoring the recommendations of specialists and instead relying on non-treating, non-specialist opinions can constitute deliberate indifference. *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *Hamilton v. Endell*, 981 F.2d 1061, 1067 (9th Cir. 1992). In general, an expert opinion is necessary to establish a claim of deliberate indifference. *See Hutchinson v. United States,* 838 F.2d 390 (9th Cir. 1988).

REPORT AND RECOMMENDATION - 8

Plaintiff alleges defendants were deliberately indifferent to his medical care because they were aware of his neuropathic pain, aware that he had previously been on gabapentin for that pain, and still withheld the medication from him for a period of over four months, refusing to allow him back onto it despite his increased pain. It is undisputed that plaintiff was diagnosed with MS in 2009 and began taking gabapentin. Dkt. 88 at 120, 127. He was still taking gabapentin when he was taken into DOC custody. *Id*. at 131. After examining him, Dr. Chung, a neurologist, recommended increasing plaintiff's dosage from 2400 mg to 3600 mg per day. *Id*. at 166-69. Plaintiff's primary care provider filed an NFR requesting this increased dosage. *Id*. at 173. However, instead of following this recommendation, defendant DuVall, after conversations with defendant Hammond (*Id*. at 178-79, 181), recommended that plaintiff be taken off gabapentin and placed under clinical observation (*Id*. at 173). Defendant Hammond did not explain his reasoning except to say he does not see "how it is appropriate to use gabapentin for treatment of 'chronic back pain/DJD' in the setting of MS." *Id*. at 181.

After the plaintiff was taken off gabapentin, his primary care provider found that it was ineffective, that plaintiff's chronic pain worsened, and again asked defendants to follow Dr. Chung's recommendation. Dkt. 88 at 193. However, defendant Southern declined to accept the recommendation, noting instead that her research indicated gabapentin in the MS arena "has been limited to treatment of nystagmus." *Id*. at 88. On appeal, the CRC similarly declined to adopt Dr. Chung's recommendation, finding that the use of gabapentin was not medically necessary. *Id*. at 209. When plaintiff saw the neurologist and MS specialist Dr. Wundes, she recommended restarting plaintiff's gabapentin and increasing his dosage to 3600 mg. *Id*. at 219. However, despite this identical recommendation from a second specialist, CRC again found gabapentin was not medically necessary in part because gabapentin was a "drug of abuse in

REPORT AND RECOMMENDATION - 9

DOC" and plaintiff has a "[history] of polysubstance abuse." *Id*. at 238. It was not until a second email exchange between Dr. de Castilla and Dr. Wundes that CRC finally approved plaintiff's increased dosage. *Id*. at 240-244, 246, 248; Dkt. 91-4 at 9.

Here, the facts are such that a reasonable finder of fact could determine that defendants Duvall, Southern, and Hammond violated plaintiff's constitutional rights. First, multiple sclerosis and the neuropathic pain associated with it are serious medical needs because failure to treat them will lead to further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling*, 509 U.S. at 32-35. The question then is whether defendants' actions constitute an intentional denial or delay of medical care.

Here, a reasonable finder of fact could conclude that these defendants completely disregarded Dr. Chung's recommendation. PA Phillips, on the recommendation of Dr. Chung, recommended that plaintiff's gabapentin dosage be increased to 3600 mg per day. Dkt. 88 at 173. Defendant DuVall instead removed plaintiff from gabapentin after discussing with defendant Hammond, who did not understand the use of gabapentin in the MS setting. *Id*.; Dkt. 88 at 181; Dkt. 99 at 37, 39. Defendant DuVall has since conceded that there was not a medical reason to discontinue the drug. Dkt. 91-1 at 65. After one month with only negative effects, plaintiff's primary care provider again filed an NFR asking defendants to follow Dr. Chung's recommendation. Dkt. at 193. Defendant Southern declined to do so, stating after receiving research from another pharmacist (Dkt. 100 at 79), that gabapentin use for MS is limited to treatment of nystagmus and that the research she was provided "do[es] not substantiate sufficient clinical evidence for high dose use of gabapentin." Dkt. 88 at 194. In so doing, defendant Southern continued plaintiff's denial of gabapentin, disregarding evidence from plaintiff's primary care provider that since tapering off gabapentin, plaintiff "is in pain all the time," and

disregarding Dr. Chung's explicit recommendation to increase gabapentin to control that pain. *Id*. at 193. After plaintiff was examined by a second specialist, Dr. Wundes, who again recommended the same thing as Dr. Chung, the CRC, again with defendant Hammond in attendance, rejected this recommendation, noting but disregarding the specialist's recommendation. Dkt. 91-4 at 2. It was not until Dr. Wundes explained that defendants were going against standard practice that defendant Hammond finally conceded the recommendation and the CRC, without any defendants in attendance, finally recommenced plaintiff's treatment, noting that "[m]ultiple neurologists [are] recommending gabapentin." Dkt. 91-4 at 9; Dkt. 88 at 240-44. Defendant Hammond still harbors doubts about the necessity of gabapentin in this context. Dkt.100 at 118.

A reasonable finder of fact could conclude that these defendants subjected plaintiff to increased pain from approximately December 2013 to April 2017. Although they were aware of his neuropathic pain, and although all plaintiff's treatment providers agreed that gabapentin was the correct treatment course, a reasonable finder of fact could conclude that defendants deliberately chose a course of treatment that resulted in the wanton infliction of pain on plaintiff and were deliberately indifferent to plaintiff's serious medical needs. Therefore, the Court recommends defendants' motion be denied on this ground.

## II.     Qualified Immunity

Defendants next argue that, even if plaintiff's constitutional rights were violated, all defendants enjoy qualified immunity because any constitutional violation was not clearly established at the time of the alleged infraction. Defendants are entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Plaintiff

bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir. 1996); *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995), *overruled in part on other grounds by L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996).

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1065 (9th Cir. 2006) (*quoting Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). It is not necessary that there be a prior case with the identical facts showing that a right is clearly established. It is enough that there is preexisting law that provides a defendant "fair warning" that his conduct was unlawful. *Kennedy,* 439 F.3d at 1065. "[T]he right allegedly violated must be established, 'not as a broad general proposition,' but in a "particularized" sense so that the "contours" of the right are clear to a reasonable official. *Reichle v. Howards,* 13 S.Ct. 2088, 2094 (internal citation omitted). In 2015, the Supreme Court reiterated that courts should not define clearly established rights "at a high level of generality." *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2015). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (emphasis in original). If different courts have come to different constitutional conclusions, the conduct is not prohibited by clearly established law. *See Reichle*, 566 U.S. at 669-70; *Wilson v. Layne*, 526 U.S. 603, 618 (1999). However, "[i]f the right is clearly established by decisional authority of the Supreme Court or this Circuit, [the Court's] inquiry should come to an end." *Entler v. Gregoire*,

872 F.3d 1031, 1041 (9th Cir. 2017) (quoting *Boyd v. Benton Cty.*, 374 F.3d 733, 781 (9th Cir. 2004)).

Defendants urge that federal law is not clearly established. They argue that there is no case law directly applicable to the facts of this case, and further that other courts have found defendants entitled to qualified immunity in analogous situations. Dkt. 82 at 21-24. Plaintiff counters that it has been a clearly established Eighth Amendment violation to deny treatment to a prisoner since 1992. Dkt. 90 at 22. He further urges that there is a Ninth Circuit case analogous to this case, and that the Ninth Circuit held ignoring the recommendation of an outside consultant, under certain circumstances, can amount to deliberate indifference. Dkt. 90 at 22-24.

Here, as noted above, a reasonable finder of fact could determine that defendants were deliberately indifferent when they ignored the recommendations of specialists and treatment providers, using their own non-specialist, non-treating opinions instead. In *Snow v. McDaniel*, the Ninth Circuit held that a reasonable jury could find ignoring the recommendations of specialists in favor of the opinions of non-treating, non-specialist physicians was medically unacceptable. *Snow*, 681 F.3d at 988. This case clearly establishes the premise that causing wanton pain by ignoring medical specialists' recommendations is a violation of a prisoner's rights. Because it was published before the events in plaintiff's complaint, defendants should have been on notice that their actions could violate plaintiff's constitutional rights. *See Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) (recognizing that *Snow* clarified relying on the opinion of non-treating, non-specialist physicians when ignoring specialists recommendations can constitute deliberate indifference); s*ee also Martin v. Alameida*, 2007 WL 234489 at *6 (E.D. Cal. 2007) ("Indifference can be shown when prison doctors ignore recommendations from specialists or outside physicians" (citing to two 3d Cir. cases)); *Lavender v. Lampert*, 242

F.Supp.2d 821, 845 (D. Oregon 2002) (noting that the existence of chronic pain is itself a serious medical need and "[a]ny reasonable official would understand that to deny or delay treatment for such pain . . . would constitute deliberate indifference to a serious medical condition . . .). Because of this, defendants are not entitled to qualified immunity.

Defendants also urge that, because *Snow* does not hold that prison officials must always follow the recommendation of outside specialists, it is distinguishable here. Dkt. 97 at 12 n.6. However, the question here is not whether defendants are required to accept all recommendations from outside specialists. The question is, reading the facts in the light most favorable to plaintiff, whether defendants violated his rights when they supplanted two specialists' recommendations with their own opinions. Contrary to defendants' urgings, *Snow* clearly establishes that ignoring a specialist's recommendation in favor of the opinions of non-treating, non-specialist physician and thereby causing wanton pain constitutes deliberate indifference.

Further, defendants identify several cases denying inmates particular medical care against the recommendation of outside specialists. Dkt. 81 at 23; Dkt. 97 at 11-12 (citing *Toler v. Troutt*, 631 Fed. Appx. 545, 547 (10th Cir. 2015); *Fitzgerald v. Greer*, 324 Fed. Appx. 510, 515 (7th Cir. 2009); *Norfleet v. Webster*, 439 F.3d 392, 396-97 (7th Cir. 2006)). However, these cases are all from out of our circuit and, arguably, provide little or no insight as to whether Supreme Court or 9th Circuit authority clearly establishes the law in this area.  Further, these cases involved a treating physician's decisions to prescribe medication or treat their patients in a manner contrary to a specialist, not a non-treating, non-specialist official denying treatment contrary to a specialist's recommendation, which is what we have here. They are not as analogous to the current case as *Snow*. And, *Snow* is 9th Circuit authority. Therefore, reading the facts in the light most favorable to plaintiff, a reasonable official should have been on notice that the behavior

alleged in this complaint clearly violates plaintiff's constitutional rights. Therefore, the Court recommends denying defendants' motion based on qualified immunity.

### III.     Personal Participation of Defendant Bovenkamp

Defendants also allege that plaintiff has failed to explain how defendant Bovenkamp personally participated in the alleged constitutional violations. To state a claim under 42 U.S.C. § 1983, plaintiff must allege facts showing how a defendant caused or personally participated in causing the harm alleged in the complaint. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold*, 637 F.2d at 1355. A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or failing to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

Defendant Bovenkamp's involvement in this case stems from his signature on plaintiff's final grievance. Dkt. 61 at 9. Defendants argue that, because defendant Bovenkamp's only action was to sign the grievance with input from defendant Hammond, it does not constitute personal participation. Dkt. 82 at 21. Plaintiff counters that it makes little sense to establish a substantive grievance process to reduce unnecessary legal action, and then claim administrators in the grievance process have no liability in that they merely "rubber stamp the DOC medical providers' decisions being grieved." Dkt. 90 at 20-21.

Here, the Court agrees with defendants. A signature can be enough to demonstrate personal participation if plaintiff shows the defendant was aware or should have been aware of the risk to plaintiff's health. *See Thompson v. Vidurria*, 2015 WL 5146852 at *3 (E.D. Cal. 2015). However, a signature alone is not enough. *See Peralta*, 744 F.3d at 1086. Here, defendant

Bovenkamp signed a grievance with input from defendant Hammond. Dkt. 91-3 at 21. He is not a doctor and relied on the medical opinion of medical staff who had already made a determination for plaintiff's treatment. Even if he had investigated further, there is nothing to indicate that defendant Bovenkamp would have understood plaintiff's lack of gabapentin as a serious medical need, nor would he know what the best course of treatment is. *See Peralta*, 744 F.3d at 1086 (holding that a dental supervisor who relied on dental staff's recommendation and merely signed off on his dental treatment plan had not demonstrated deliberate indifference). Because of this, plaintiff has not shown that defendant Bovenkamp personally participated in the deliberately indifferent medical treatment of plaintiff. Therefore, the Court recommends granting defendants' motion and dismissing defendant Bovenkamp from this action.

## IV.     Dismissal of Defendant Hayes

Defendants additionally move for the dismissal of defendant Hayes. Dkt. 82 at 20. Plaintiff consents to defendant Hayes's dismissal. Dkt. 90 at 21. Therefore, the Court recommends defendant Hayes be dismissed from the action.

## V.     Injunctive Relief

Defendants finally argue that, as a matter of law, plaintiff is not entitled to injunctive relief. In the Ninth Circuit, a plaintiff may establish standing for prospective injunctive relief when "the alleged threatened injury is sufficiently likely to recur." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Put another way, a plaintiff must "demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *Melendres v. Arpaio*, 695 F.3d 990, 997–98 (9th Cir. 2012) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983)). A plaintiff may prove that such an injury is likely to recur by showing: (1) "the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy;'" or (2) "the

harm is part of a 'pattern of officially sanctioned behavior, violative of the plaintiffs' [federal] rights.'" *Id.* (quoting *Mayfield v. United States,* 599 F.3d 964, 971 (9th Cir. 2010).

Plaintiff alleges that his injury is likely to recur. He claims his original injury stemmed from the DOC formulary, that the formulary still requires his gabapentin prescription to be renewed on an annual basis, and that there is nothing stopping defendants from once again arbitrarily revoking his medication. Dkt. 61 at 13-14. Nonetheless, plaintiff has not shown his injury is so likely to recur that a permanent injunction is necessary. DOC does have a formulary and gabapentin's designation in that formulary requires that any prescription be reviewed annually. Dkt. 87-1 at 98. However, the injury alleged in plaintiff's complaint stems from defendants' alleged disregard for plaintiff's specialists, not from the written policy itself. Plaintiff has provided evidence that defendants denied gabapentin to three non-parties also suffering from MS. Dkt. 91-4 at 15-17. However, plaintiff has not shown that defendants similarly supplanted specialists' recommendations with their own non-treating, non-specialist opinions in those three cases. Plaintiff has not demonstrated that those cases constitute a pattern of unlawful, officially sanctioned behavior. Because of this, plaintiff has not demonstrated that his injury is likely to recur. Therefore, injunctive relief is inappropriate and the Court recommends granting defendants' motion on this ground.

**CONCLUSION**

The undersigned recommends that defendants' motion for summary judgment (Dkt. 82) be granted in part and denied in part. Defendants have properly demonstrated that plaintiff is not entitled to injunctive relief, and so defendants' motion should be granted on that ground. Defendants have also shown defendant Bovenkamp did not personally participate in plaintiff's alleged constitutional violations, and so should be dismissed from the action. However, the

remaining defendants DuVall, Southern, and Hammond have not shown that they are entitled to judgment as a matter of law with regard to any of plaintiff's substantive grounds, nor that they have qualified immunity. Therefore, the Court recommends that defendants' motion be denied on those grounds and that plaintiff's remaining claims against these defendants move forward on the merits.

In addition, the parties agree that defendant Hayes should be dismissed from the action, so defendants' motion (Dkt. 82) should be granted on this ground.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 5, 2018**, as noted in the caption.

Dated this 12th day of December, 2017.

J. Richard Creatura
United States Magistrate Judge