District Court Judge Benjamin H. Settle
Magistrate Judge J. Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ETIENNE CHOQUETTE,

                Plaintiff,

        v.

CRIS DuVALL, et al.,

                Defendants.

No. 3:15-cv-05838-BHS-JRC

PLAINTIFF'S TRIAL BRIEF

## I.    INTRODUCTION

Plaintiff Etienne Choquette's case is relatively straightforward.  It is about one prisoner with multiple sclerosis ("MS"), whose necessary treatment for severe neuropathic pain was stopped by Defendants for five months.  Defendants based their denial on nothing more than a perfunctory email from Defendant Dr. Steven Hammond, who lacks expertise in MS and who had never examined Choquette, reviewed his medical records, or consulted with the treating primary care provider or consulting specialist neurologists whose recommendations Hammond overrode.  Once Hammond gave that instruction, Defendant pharmacists Cris DuVall and Michelle Southern took action to uphold and defend it, without regard for DOC protocols and guidelines or the expertise of Choquette's treating providers, even after Defendants learned that removing the gabapentin was causing him increased pain and functional impairment.

PLAINTIFF'S TRIAL BRIEF - 1

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Defendants aim to turn this case into something it's not.  They claim their decision to deny Mr. Choquette's gabapentin treatment is grounded in the DOC's security concerns regarding gabapentin.  But their argument is: (1) as a straw-man to allow them to focus unduly on the unremarkable and uncontested proposition that drug abuse is generically a concern in prisons; and (2) to unfairly request an instruction requiring the jury to defer to their decision to deny the Plaintiff pain medication under the pretense that it was based on a need to preserve discipline and maintain internal security.  But Plaintiff Etienne Choquette has never challenged the validity of any general DOC procedure for dispensing gabapentin, and Defendants have not shown that their decision to repeatedly deny the renewal of his gabapentin prescription over five months was in any way related to discipline and security.  Accordingly, the Court should deny Defendants' request for an instruction to the jury to defer to Defendants' judgment, and should prevent Defendants from making arguments that have no basis in the evidence of the case.

## II.     DEFENDANTS' PROPOSED INSTRUCTION

In the primary instruction about Plaintiff's right to be free from cruel and unusual punishment at their hands, Defendants request that the Court instruct the jury that:

> In determining whether the defendant violated the plaintiff's rights as alleged, you should give deference to prison officials in the adoption and execution of policies and practices that in their judgment are needed to preserve discipline and to maintain internal security.

But this language is merely optional.  And the Ninth Circuit has declared that trial courts should only "rarely" instruct juries with this language in claims of inadequate medical care, and only when the Defendants show that discipline and security were plausibly the basis for their decision to deny care.  Defendants have not shown security was a plausible cause.  This is not one of those rare cases for applying the deference instruction.

PLAINTIFF'S TRIAL BRIEF - 2

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

The "deference instruction should not be given in the ordinary Eighth Amendment medical care case."  Comment to Ninth Circuit Model Civil Instruction 9.27.  Rather, it may be given only when "there is evidence that the challenged medical decision was made pursuant to [a] security-based policy or practice" that "addresses bona fide safety and security concerns." *Chess v. Dovey*, 790 F.3d 961, 974 (9th Cir. 2015).  In this case, all of the relevant evidence shows that the decision to stop Mr. Choquette's gabapentin was based on a dispute regarding whether it was medically necessary, not due to a security concern regarding Mr. Choquette.  Evidence that gabapentin was restricted on the DOC formulary due to general concerns about abuse potential is not sufficient to show that the denial of care *to Mr. Choquette* was pursuant to a security-based policy or practice.  There are countless prescription medications that have some potential for abuse; accepting Defendants' argument would mean that every decision to deny treatment with one of those medications would be entitled to the deference instruction, regardless of the circumstances of the individual prisoner or the actions of the prison officials.  That result would run directly counter to the Ninth Circuit's guidance that the deference instruction is the exception rather than the rule.

Here, in four denials over five months, defendants gave shifting reasons for their decisions to stop Mr. Choquette's treatment and only once, at the very end, raised a concern that gabapentin is susceptible to abuse.  This fleeting, *post-hoc* rationalization has become the centerpiece of Defendants' request, placing great weight on Mr. Choquette's occasional drug use decades before his incarceration and his prior experience with dependence on an opioid that had been prescribed to him for severe pain after a car accident.  But there is no record of Mr. Choquette ever abusing or diverting gabapentin or any other drug while incarcerated, he has not been diagnosed with a substance abuse disorder, and DOC's own psychologists classified him as low risk for substance abuse in prison.  Nor is there any evidence that defendants actually

PLAINTIFF'S TRIAL BRIEF - 3

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

reviewed the records on which they now rely when they abruptly decided to stop his necessary and effective treatment after several successful years.

From February 2011, when Mr. Choquette entered DOC, until December 2, 2013, DOC agreed his gabapentin treatment was medically necessary, and he took the medication without incident. Again, from April 30, 2014 until the present, DOC has agreed his gabapentin treatment is medically necessary, and he has taken the medication without incident. There is no plausible basis for concluding that Defendants' decisions to stop Choquette's gabapentin treatment from December 2, 2013 until April 30, 2014—against the recommendations of his prison primary care provider and his two outside consulting neurologist specialists, and without providing an adequate substitute to treat his pain—were based on concern for prison discipline or security *as to Mr. Choquette*.

**A.    DOC decides gabapentin is medically necessary for Choquette.**

Choquette entered DOC in February 2011. Dkt. 91-2 at 2 (Intake) at 1. He acknowledged upon entry that he had occasionally taken drugs in the past, last using street drugs more than 13 years before (in 1998). *Id.* He acknowledged that he had experienced dependence on methadone when it was prescribed to him for pain before his MS diagnosis. *Id.*; Dkt. 91-1 at 38-39 (Choquette) at 95:14–96:9. He never had a diagnosis of Substance Use Disorder, and a DOC psychological report concluded his risk for substance abuse in prison was low. Dkt. 91-2 at 5 (OMNI diagnoses); Dkt. 91-2 at 10 (Psych Report).

DOC decided to continue treating Choquette's neuropathic pain with gabapentin, even though it was a non-formulary drug. Gabapentin was first approved in March 2011 by Dr. Frank Longano, a DOC Facility Medical Director. Dkt. 91-2 at 39 (DuVall Email) at 1; Dkt. 91-1 at 115 (Hammond) at 105:22–106:16. It was approved again by Defendant Southern in December 2012. Dkt. 91-2 at 26 (2012 NFR). At that time, Mr. Choquette was allowed to keep gabapentin

PLAINTIFF'S TRIAL BRIEF - 4

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

on his person rather than receive it at pill line (*id.*); still, there were no problems.  Throughout his time in prison, Choquette has never abused or diverted gabapentin or any other drug.  *See, e.g.*, Dkt. 91-4 at 13 (2015 CRC Approval); Dkt. 91-3 at 7 (2014 NFR Denial).  In fact, he has not had any disciplinary infractions.  Dkt. 91-1 at 32 (Choquette) at 50:23–25.

Defendant Duvall testified that when she sought input from the group, "I was only considering a raise in his dose of gabapentin, not a discontinuation altogether," and that she was not "aware of any medical reason" to discontinue the treatment.  Dkt. 91-1 at 64-65 (DuVall) at 40:21–41:10.

But then defendant Hammond, who as DOC medical director monitored the clinical pharmacist email list, wrote back: "I don't see how it is appropriate to use gabapentin for treatment of 'chronic back pain/DJD' in the setting of MS."  Dkt. 91-2 at 37.  He made no mention of discipline or security concerns in general or about Mr. Choquette.

DuVall responded by clarifying that Choquette was "suffering from all 3" diagnoses, that the NFR had previously been "approved for gabapentin use in MS," and that the alternative drugs "carbamazepine and venlafaxine would be contraindicated."  Dkt. 91-2 at 39.

But Dr. Hammond wrote he thought Choquette's gabapentin should be stopped because it was his "clinical impression anecdotally" that neuropathic pain is not "a common or typical feature" of MS.  Dkt. 91-1 at 111, 114 (Hammond) at 36:1–6, 94:6–10.  DuVall gave no reason for the denial, but simply copied the language from Hammond's email, writing: "Clinical observation and management without gabapentin is recommended."  Dkt. 91-3 at 5.

Neither DuVall nor Hammond had ever met Choquette or reviewed his medical records before making this decision.  Dkt. 91-1 at 67 (DuVall) at 44:13–24; Dkt. 91-1 at 113 (Hammond) at 59:10–15.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

When Plaintiff's treater again requested approval for renewing Mr. Choquette's gabapentin prescription, after Mr. Choquette began experiencing increased pain, Defendant Michelle Southern, Pharm D., was designated to respond to the request.  Southern denied the request the next day.  Dkt. 91-3 at 8-9.  In her denial, Southern wrote that "Per Clinical Pharmacology the only off-label use of gabapentin in multiple sclerosis has been limited to treatment of nystagmus" and concluded from her (inaccurate) citations that there was not "sufficient clinical evidence for high dose use of gabapentin."  *Id*. at 9.  Again, she made no mention of discipline or security concerns in general or about Mr. Choquette.  Southern testified that she did not have a "reason to believe that the gabapentin was causing a problem" for Choquette, and the denial was not based on a "concern about any prior drug use."  Dkt. 91-1 at 85-86, 88 (Southern) at 85:15–86:1, 104:8–14.  She "never met with the patient."  *Id.* at 82 (Southern) at 76:5–25.

The CRC denied the request on January 29, 2014, determining "it is NOT medically necessary" to treat Choquette's neuropathic pain.  Dkt. 91-3 at 12.  The CRC gave no rationale for this decision, writing only that the case had been "discussed by the group" and they had "discussed general neurology versus following with MS specialist."  *Id.*  The CRC has no neurologist.  Dkt. 91-1 at 125 (Hammond) at 214:2–22.  The CRC made no mention of any concern about prison discipline or security, in general or about Mr. Choquette.

The DOC referred Choquette to Dr. Wundes, a state employee and director of the UW MS Clinic, who as a neurologist specializes in Mr. Choquette's disease.  The DOC did not express any concerns to Dr. Wundes about a history of drug abuse or a risk for abuse of gabapentin.  They simply asked, "Is gabapentin an appropriate treatment for his nerve pain?"  Dkt. 91-1 at 12 (Wundes) at 50:15–51:4.  After examining Choquette, Dr. Wundes recommended

PLAINTIFF'S TRIAL BRIEF - 6

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

renewing his gabapentin prescription at the dosage recommended by Dr. Chung and Choquette's DOC treater, Ms. Phillips.  Dkt. 91-3 at 28.

But despite this recommendation, the CRC (chaired by Defendant Hammond) denied gabapentin yet again.  Ex. 31.  The CRC report mischaracterized large parts of Wundes's evaluation, claiming that Choquette had "no objective signs" of pain or spasms and was "very functional," despite documentation that pain and spasms were a "daily constant problem" severe enough to interfere with sleep and make Choquette quit his job, and ignored Wundes's explanation that Choquette's pain description was consistent with new lesions in his thoracic spine, which of course turned out to be true.  *Compare* Dkt. 91-4 at 2 *and* Dkt. 91-3 at 24-25, 28. Finally, the CRC report noted that Choquette "has a hx of poly-substance abuse."  Dkt. 91-4 at 2. This is the first mention of *potential* for abuse and the first mention of it as *a* reason for denying gabapentin treatment, nearly five months after the initial denial.  And, it was plainly an add-on, mentioned only after the CRC's explanation that it found Mr. Choquette did not need the medication.  It clearly was not *the* reason for denial.

Indeed, Dr. Lopez de Castillo wrote to Dr. Wundes that the CRC "felt that the use of the gabapentin was more based on a clinical symptom" "rather than on an objective abnormality on physical exam"—emphasizing that it was the lack of perceived medical necessary that led to denial.  Dkt. 91-4 at 5.  In his email to Dr. Wundes, he mentioned that Choquette had a prior history of polysubstance abuse only parenthetically as an explanation for which the CRC wanted evidence of an "objective" abnormality.  *Id*.  Dr. Wundes promptly dispelled the CRC's purported questions and within days the CRC reversed its denial.  Dkt. 91-4 at 4, 9.

Defendants DuVall and Southern are not members of the CRC.  There is zero evidence that they took prison discipline or security into account when deciding to deny Mr. Choquette gabapentin, so there is no plausible basis for presenting the optional "deference" jury instruction

PLAINTIFF'S TRIAL BRIEF - 7

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

as to them.  Defendant Hammond seeks to use the CRC's, not his, last minute raising of Mr. Choquette's ancient use of drugs recreationally to question the reliability of his symptom reporting to underpin five months of denying medical treatment of Mr. Choquette's neuropathic pain.  Dr. Hammond should not be allowed to wag the dog of this litigation with this flimsy tale.

**III.    DEFENDANTS ARE NOT ENTITLED TO THE DEFERENCE INSTRUCTION**

"[A] trial judge may instruct a jury to defer to a policy or practice adopted and implemented by prison officials only when that policy or practice addresses bona fide safety and security concerns, *and when there is evidence that the challenged medical decision was made pursuant to that security-based policy or practice*.  (Emphasis added).  *Chess v. Dovey*, 790 F.3d 961, 974 (9th Cir. 2015).  "Put another way, the trial judge in an Eighth Amendment medical care case *should not give the deference instruction unless* one party's presentation of the case plausibly draws a connection between the security-based policy or practice and the medical care decision at issue."  *Id*.

In the context of inadequate medical treatment, the Ninth Circuit announced that it was "authorizing the use of the deference instruction *only in exceptional medical care cases*." (Emphasis added).  *Id*. at 975.

Explaining the basis for this strict limitation, the Court described that "[t]he requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals."  *Id*. at 973 (citing *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir.1992), overruled in part on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc)).  "For this reason, in the great majority of cases, "'[i]n deciding whether there has been deliberate indifference to an inmate's serious medical needs, we need not defer to the judgment of prison doctors or administrators.'"  *Id*. at 973–74 (citations omitted).

PLAINTIFF'S TRIAL BRIEF - 8

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

The Ninth Circuit's opinion is replete with warnings to trial courts that the deference instruction has exceedingly limited application to medical cases: the "instruction may sometimes, though rarely, be appropriate"; it may be considered only for "outlier cases in which medical care and security concerns genuinely clash"; the opinion "authoriz[es] the use of the deference instruction only in exceptional medical care cases." And, the sole example that the Court gave for appropriate use of the instruction was when delay in care was the result of a prison riot. *See id.* at 974 (citing *Clement v. Gomez*, 298 F.3d 898, 905 n. 4 (9th Cir.2002) (defendants delayed treating inmates exposed to the pepper spray they used to stop a fight because they needed to maintain order first….")).

The Ninth Circuit's strong admonition in *Chess* was further explained by the Court's explanation this year in *Shorter v. Baca* that "As currently written, our circuit's model jury instructions for conditions of confinement and excessive force cases, which include a deference to jail officials instruction, are inconsistent with the model jury instructions for similar cases in the majority of other circuits with published pattern instructions, which generally do not include an additional deference instruction." 895 F.3d 1176, 1184 (9th Cir. 2018). Accordingly, the Ninth Circuit took "this opportunity to clarify our precedent and align it with the practices of other circuit courts of appeal." *Id*. Specifically, the Court "reiterate[d] that the instruction may be given only when there is evidence that the treatment to which the plaintiff objects was provided pursuant to a security-based policy." *Id*.

In *Shorter*, the Court held that a deputy "would not permit detainees out of their cells if the facility was understaffed because she worried that recreation time or showers might escalate into violence." *Id.* at 1185. But despite this claimed concern about a general potential for increased violence—analogous to the DOC's claimed concern about a general potential for abuse in this case—the Court concluded that the deputy's testimony "suggest[ed] that the reason for the

PLAINTIFF'S TRIAL BRIEF - 9

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

policy is not a legitimate penological one, but one based on overcrowding and understaffing." On these facts, "[a] deference instruction was not warranted" because "[j]ail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Id*. (citing *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). *See also id*. at 1186 (citing *Allen v. Sakai*, 48 F.3d 1082, 1088 (9th Cir. 1994)).

Here, Defendants did not base their denial of gabapentin on security concerns. But even if they had, the deference instruction would have no place as a result of the *Shorter* rationale that prisons must treat serious medical needs despite inconvenience or cost or "worry." Defendants could have managed any legitimate concerns about security the same way they did before and after they denied Mr. Choquette his gabapentin prescription. They have offered no rejoinder to this common sense conclusion.

Indeed, in *Shorter*, the Court rejected application of the deference jury instruction because the Defendant's denial of exercise to prisoners was "[u]nlike the prison officials in *Norwood*, who enacted the policy due to an unusual and highly volatile set of security-related concerns," the Defendant did not make individualized determinations, its "policy was not adopted in response to an emergency or a dangerous situation that required jail officials to use their expertise to prevent further violence," and "the County cannot justify its recreation policy by a general statement that mentally ill detainees are 'unpredictable' or 'violent' and 'impulsive,' because many inmates, including those housed in administrative segregation as in Pierce and Spain, display antisocial behaviors and yet, we have concluded that all inmates are entitled to an individualized evaluation and recreation, barring inclement weather, unusual circumstances, or severe and imminent security risks." *Id*. at 1186–87 ("We conclude that the deference instruction should ordinarily not be given when ['a concern about overcrowding and understaffing'] is the County's sole justification.").

PLAINTIFF'S TRIAL BRIEF - 10

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Moreover, "whether the medical care of an individual prisoner meets constitutional standards is generally assessed on a case-by-case basis rather than in deference to a prison-wide policy." *Norman v. Riaz*, No. 2:15-CV-1346 AC P, 2016 WL 3748711, at \*5 (E.D. Cal. June 10, 2016), report and recommendation adopted, No. 215CV1346GEBACP, 2016 WL 3670034 (E.D. Cal. July 11, 2016), adhered to on reconsideration, No. 215CV1346GEBACP, 2016 WL 7212802 (E.D. Cal. Dec. 13, 2016) (citing as an example, *Chess v. Dovey*, 790 F.3d 961, 975 (9th Cir. 2015)).  In other words, the Defendants' decision on how to treat the particular plaintiff and his medical needs is the focus of the inquiry into liability.  As a result, the deference instruction will be appropriate only where the general policy requires the Defendants to deprive this particular patient of the treatment at issue—which Defendants have not claimed.

Defendants have not shown, let alone alleged, that severe or imminent security risks prompted their denial of gabapentin to Mr. Choquette.  There only stated concerns were vague and generalized, and raised for the very first time in the last week of their five-month denial of treatment—and only by the CRC, not by Defendant DuVall, Defendant Southern, or specifically by Dr. Hammond.  This is not among the rare or exceptional cases in which the Ninth Circuit has authorized use of the "deference to prison officials" jury instruction that Defendants' request.

### IV.    CONCLUSION

Plaintiff has chosen to devote his trial brief to this issue because he believes it presents the most important legal issue that must be dealt with during the trial, as well as the issue most likely to lead to further litigation on appeal.  Based on the foregoing evidence and authority, as well as Plaintiff's response to Defendants' supplemental brief regarding the motions in limine, Plaintiff asks that the Court (1) not give the optional deference instruction; and (2) take care throughout the trial to prevent Defendants from making arguments or presenting theories that are not based on any evidence in the case.

PLAINTIFF'S TRIAL BRIEF - 11

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

DATED this 11th day of September, 2018

MacDONALD HOAGUE & BAYLESS

By:    */s/Tiffany Cartwright*
Jesse Wing, WSBA #27751
JesseW@mhb.com
Tiffany M. Cartwright, WSBA #43564
TiffanyC@mhb.com
*Attorneys for Plaintiff*

PLAINTIFF'S TRIAL BRIEF - 12

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

<u>CERTIFICATE OF SERVICE</u>

I certify that on the date noted below I electronically filed this document entitled

**PLAINTIFF'S TRIAL BRIEF** with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to the following CM/ECF system participant(s):

**Attorney for Defendants:**

Aaron M. Williams, WSBA #46044:      AaronW@atg.wa.gov
Michelle M. Young, WSBA #52423:      Michelle.Young@atg.wa.gov

DATED this 11th day of September, 2018, at Seattle, Washington.


                                    /s/ Tiffany Cartwright
                                    Tiffany M. Cartwright, WSBA #43564

PLAINTIFF'S TRIAL BRIEF - 13

No. 3:15-cv-05838-BHS-JRC

11255.01 lh241202

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961